KATHERINE RIHNER ET AL., APPELLANTS, V. PETER B. JACOBS ET AL., APPELLEES.

FILED JULY 12, 1907. No. 14,911.

1. **Cancelation of Instruments:** PLEADING. In a petition to cancel a conveyance of real property alleged to have been obtained by false and fraudulent representations, an allegation that the plaintiff, in reliance upon such representations, parted with the title to the land is a sufficient plea that he was damaged by the fraud.

2. **Evidence** examined, and found sufficient to sustain finding of the district court.

3. **Deeds:** CONSTRUCTION. Where a deed given in January recites that it was made in lieu of one for the same property executed in the preceding October, and there is neither evidence nor allegation of any new consideration or change of circumstances between the parties during the interval, the two deeds are to be considered as a part of the same transaction.

4. **Equitable Estoppel:** TRUST RELATIONS. In the application of the doctrine of equitable estoppel to a transaction where the true owner of property permits another to hold the legal title in trust for him, and credit is given the trustee personally upon the faith of such apparent ownership, cases, where the trust relation is between relatives and arises out of contract, distinguished from those where the trust arises *ex maleficio* and the relation is between strangers.

5. ———: ———. Where a conveyance of real property is obtained from the owner by fraud, and a general creditor of the fraudulent grantee asserts that he gave credit upon faith in such apparent ownership, and claims that the owner should be estopped to deny the title of the fraudulent grantee, such estoppel will be denied where the reliance upon such apparent ownership is not clearly established, and the creditor appears to have been as negligent in extending credit as was the owner in the original transaction.

APPEAL from the district court for Sarpy county: GEORGE A. DAY, JUDGE. *Affirmed in part: Petition of intervention dismissed.*

*Charles Battelle* and *J. J. Hess,* for appellants.

*Byron G. Burbank* and *Will H. Thompson, contra.*

CALKINS, C.

In October, 1904, one Samuel Rihner of Pottawattamie county, Iowa, conveyed to one Peter B. Jacobs, of the same place, a farm of 312 acres situate in Sarpy county in this state, subject to a mortgage of $11,500. The consideration was $31,200, and Jacobs paid in cash $100, and gave his notes, secured by 196 shares of the capital stock of the Northwestern Trust Company of Guthrie, Oklahoma, of the par value of $100 a share, for the remainder of $19,600. The deed given by Rihner was recorded January 5, 1905, and another deed for the same property was executed by and to the same parties on January 21, 1905, which latter deed was recorded February 2, 1905. The deed last mentioned is said to have been given to more fully describe the property intended to be conveyed, and contains the statement: "This deed is made in lieu of the deed made and signed by Samuel Rihner, Sr., and Katherina Rihner, his wife, on the 17th day of October, 1904, the signers of this deed being both the same persons." On the 17th day of March, 1905, Rihner, becoming suspicious that the stock of the Northwestern Trust Company given him as security was of

little value, charged Jacobs with fraud in obtaining the
deed. Jacobs had paid off the mortgages existing on the
land at the time he received the deed, and had executed
new ones for a larger amount by from $3,100 to $3,300.
Rihner's attorney demanded that he make a mortgage on
the 312 acres in Sarpy county for the $19,600, and include
in that mortgage additional land to equal the difference
between the old mortgages he had paid off and the new
ones he had executed upon the land. Mr. Jacobs pro-
fessed to be willing to do this, saying that the transaction
was not as it should have been, but that he never meant
to cheat Mr. Rihner out of anything. Such a mortgage
was drawn and signed by Jacobs. This was done at
Omaha, and, Mrs. Jacobs being in Iowa, Mr. Jacobs
promised to have his wife sign it the next day; but, when
that time arrived, refused to complete the transaction,
and on the same day Rihner filed his petition in this case,
alleging that Jacobs obtained the deed by false and fraud-
ulent representations, and praying that the conveyance of
said property to Jacobs be declared void for such fraud,
and that he have a reconveyance of the land in question.
An amended and substituted petition was filed on the
13th day of June, 1905, making the Northwestern Trust
Company, Alexander Buchanan, its secretary, and one
Kapke, a tenant, parties. Issue was formed on this peti-
tion by the answer of the above named parties, who denied
the false representations. Meanwhile, on the 13th day
of March, 1905, Jacobs made to a bank in Iowa his prom-
issory note for $1,300, due in one year from that date, and
procured Peter and Claus Danker to sign the same as
sureties. In the October following, the Dankers paid the
principal of the note and interest earned up to that date,
and the bank thereupon indorsed and delivered the note
to the plaintiffs. They, in December, 1905, began an ac-
tion in the district court for Sarpy county upon this
note, procuring an order from the county judge of Sarpy
county allowing an attachment under the provisions of
section 237 of the code permitting that remedy to credi-

tors on claims before due in certain cases, and caused the same to be levied upon the above lands so as aforesaid deeded by Rihner to Jacobs. On the 8th day of December, 1905, the Dankers filed a petition of intervention in this action, claiming an interest in the premises in litigation by reason of their attachment, and alleging that they signed the notes in question upon the representation of Jacobs that he owned the premises in controversy, and claiming that the plaintiff Rihner was estopped to deny that Jacobs was the owner of said premises, also denying the allegations of fraud on the part of Jacobs set up in the plaintiffs' petition. Issue was joined upon this petition of intervention, and the court in its final decree found in favor of the plaintiffs upon the issues in the main case, and upon the issues in the petition of intervention in favor of the interveners, decreeing that, if their attachment should be sustained in the suit brought by them, the amount of the judgment therein should then be a first lien upon the real estate, and that the sheriff or special master should make and execute to the plaintiffs a deed to said premises subject to the contingent lien of said interveners. From this decree upon the intervention the plaintiffs appeal, and the interveners file a cross-appeal, complaining of so much of the decree in their favor as made the same dependent upon the final issue in the attachment suit, and that the evidence did not sustain the finding in the main case that the deed from Rihner to Jacobs was obtained by fraud.

1. The interveners argue that the amended petition is not sufficient because, as they allege, there is no allegation that Rihner was in any manner damaged by his reliance upon the statement of Jacobs. It is alleged in the petition that the defendants represented the stock of the Northwestern Trust Company to be worth par and paying an annual dividend of 12 per cent.; that these representations were false and known by Jacobs to be false at the time of their being made, the said stock being in fact worthless, but that Rihner, fully believing the said

representations to be true, accepted the said stock as
security, and parted with the title to his land on the
strength thereof. The allegation that he parted with the
title to the land upon the strength of these representa-
tions is a sufficient allegation of the damage he suffered
by relying upon the same, and the petition is not defective
in this respect.

2. The interveners urge that the evidence is not suffi-
cient to support the finding in favor of the plaintiffs, al-
though, in what particular, the brief and argument of the
interveners does not specify. The making of the rep-
resentations, and the reliance of Rihner upon them, and
the making of the deed in consequence, is fully estab-
lished, and, if there was any want of proof of the falsity
of the representations concerning the character and value
of the stock, we think it is supplied by the answer of the
defendants, which is to the effect that the sale was really
made to the trust company, Jacobs being a trustee, and
that the stock was issued in payment of the purchase
price of the land; in other words, that the land was paid
for with the stock, and the stock was paid for by the land.
This, we think, is an admission that the stock was not, as
represented by Jacobs, fully paid up and earning a divi-
dend of 12 per cent. In addition to this there was the
admission of Mr. Jacobs "that the transaction had not
been a square one"; and, again, "that it had not been
just as it should have been and he would give additional
security to make it right." We think the evidence suffi-
cient to support the finding of the trial court.

3. The interveners contend that there is no allegation
or proof to show under what circumstances the second
deed was given or to impeach its validity. The deed itself,
as we have seen, contains the statement that it is given in
place of the first deed, and, in the absence of any showing
that there was any new or different consideration, we
think the two should be considered, in view of this recital,
as one conveyance, and that they must stand or fall to-
gether. It is, however, urged that by giving the second

deed Rihner ratified and confirmed the contract, and this is founded upon the statement in the interveners' brief that Rihner was informed prior to December 25, 1904, that the stock received in trade for the farm was worthless. The only testimony upon which this statement could be predicated is that of Mr. William O. Stuhr, who at the time of the transaction was called in by Mr. Rihner "to see if the papers were made out correctly." He testifies that he at that time told Mr. Rihner to be careful what he was doing, and that he (Stuhr) did not think the stock was worth what Jacobs represented it to be, and that some time after that he told Mr. Rihner that he thought it was worthless, and Rihner replied that he believed it was all right. Being pressed for the date of this statement to Rihner, Mr. Stuhr finally said that he thought it was before Christmas, but he expressly disclaimed any knowledge of the matter, and was merely stating his opinion or suspicion. It cannot be said that Mr. Rihner discovered the worthless character of the stock until the facts upon which its value depended were brought to his notice.

4. It is a general principle that an attachment reaches only the actual interest of the debtor in the property attached. *Barnes v. Cox,* 58 Neb. 675; *Chicago, B. & Q. R. Co. v. First Nat. Bank,* 58 Neb. 548. But in this case the interveners contend that they became Jacob's surety in reliance upon his apparent ownership of the Sarpy county land, and that the plaintiffs ought therefore to be estopped to claim, as against them, that it was not in fact Jacobs' property, invoking the principle that, where one of two innocent persons must suffer by the fraud of a third, he who trusted the third person and placed the means in his hands to commit the wrong must bear the loss. If Jacobs had mortgaged the land in question to secure the interveners against the liability incurred by them, there can be no question that the rule stated above would have applied, and that the mortgage would have been valid. *Hansen v. Berthelsen,* 19 Neb. 433. In such case, Jacobs

would have exercised the power which Rihner conferred upon him by investing him with the legal title, and the interveners would have relied upon the existence of such title in Jacobs. Here we are, however, asked to go one step further, and to hold that, where the legal title to land is fraudulently obtained, the victim of such fraud is estopped to claim the title as against the general creditor, who takes no lien upon the land, but who asserts that he gave credit to the fraudulent grantee upon the strength of such apparent ownership. To sustain this claim we are cited to *Roy v. McPherson,* 11 Neb. 197; *Early v. Wilson,* 31 Neb. 458; *Adler & Sons Clothing Co. v. Hellman,* 55 Neb. 266; *Hoagland Bros. v. Wilson,* 15 Neb. 320. In each of the cases cited the trust was intentionally created, and the transaction was between relatives, both of which elements are lacking in the case at bar. There was no intention by Rihner to place the title in Jacobs and retain a beneficial interest, thereby making Jacobs his trustee. The trust in this case arose by operation of law, and was not contemplated by the parties at the time of the transaction, and there can, of course, be no question of *bona fides,* such as always exists in transactions between near relatives where one places or allows the legal title to remain in the other while he or she retains the beneficial interest. Rihner did not knowingly trust his title to Jacobs. He supposed he was receiving adequate security for the payment of the remainder of the purchase price of his land. It is true he relied on the veracity of Jacobs, but not on his business integrity or ability, as where one deeds land to another to hold for the use and benefit of his grantor. Neither could he have had it in contemplation that the holding of the title would enable Jacobs to obtain credit which he would not otherwise have been able to secure. He evidently believed the stock that Jacobs parted with was as valuable as the land, or he would not have accepted it as security. If it had been as represented, Jacobs' borrowing power would not have been enhanced by the transaction, for he would have lost in parting with

the stock what he gained in obtaining the title to the land. We do not therefore think that the decisions in the cases above cited necessarily control the disposition of this case.

5. There is a theory approved and adopted by the courts of some states which makes the very essence of equitable estoppel to consist of fraud, and affirms that an actual fraudulent intention to deceive or mislead is ·a necessary requisite in the conduct of the party in order that it may create an equitable estoppel. *Boggs v. Merced Mining Co.*, 14 Cal. 279; *Martin v. Zellerbach*, 38 Cal. 300. In a general discussion of the principles, elements, operation and effect of equitable estoppel, Mr. Pomeroy comes to the conclusion that such fraud is not a necessary element, except as the word fraud is used as synonymous with "unconscientious" or "inequitable," and that it is accurate to describe equitable estoppel in general terms as such conduct by a party that it would be fraudulent or a fraud upon the rights of another for him afterwards to repudiate and to set up claims inconsistent with it. 2 Pomeroy, Equity Jurisprudence (3d ed.), sec. 803. Applying this rule, which is most favorable to the existence of such estoppel, to the facts before us, we are led to inquire whether it is unconscientious or inequitable for Rihner to assert that Jacobs was not really the owner of this land because of the fraud he had practiced in obtaining it. If the interveners had taken a specific lien upon the land, the solution would have been, as we have already seen, very simple. In such case there could have been no question as to their reliance upon Jacobs' act, nor of negligence upon their part. But the facts before us present an entirely different case. The interveners both testify that Jacobs told them he had a deed to the farm, and one of them says that he had heard of it the fall before. While they both say that they would not have signed the note if they had not believed Jacobs owned the farm, there is no evidence that either saw the deed, or knew the land, or examined the record. They relied upon

the statement of Mr. Jacobs as completely as did Rihner, more so in fact, for Mr. Rihner, while he relied upon Jacobs' statement as to the value of the stock, required it to be assigned to him; but the interveners, though relying upon his statement as to the ownership of the farm, did not take the precaution to secure the pledge of that property. If Rihner was guilty of negligence in deeding the land to Jacobs upon his unsupported statement of the value of the stock, the interveners were equally negligent in taking Jacobs' unsupported statement as to the ownership of the land. If it be said that an inspection of the record would have supported Jacobs' statement, the answer is that the real question is upon what did the interveners rely. Again, the testimony of a party as to the operation of his own mind should be received with caution, and weighed in the light of surrounding facts. Assuming it to be altogether candid, it is yet a conclusion or an opinion of the witness. The interveners had been acquainted with Jacobs for some years, and must have had an opinion concerning his financial ability and integrity. They knew that buying a farm did not make a man solvent, and they omitted to ask him the crucial question as to whether he had paid for it. Giving the utmost effect to their testimony, they relied upon the fact that Jacobs said he was the owner of the farm, and not upon the fact that Rihner had made the deed. We do not determine the question whether a person who has parted with the title to real estate, in reliance upon false and fraudulent representations, is estopped to assert his rights as against a mere general creditor of the fraudulent vendee who has obtained no interest in, nor lien upon, the land itself. It is significant that we are not cited to any decision which holds that an equitable estoppel may arise in such a case. We are satisfied that in this case the negligence of the interveners was fully as great as that of Rihner, and that there is nothing in the facts and circumstances that makes it unconscientious or inequitable for Mr. Rihner to now assert that Jacobs, because of his

fraudulent representations, obtained no real interest in the land.

We therefore recommend that the finding and decision of the court below upon the petition of intervention be reversed and said .petition dismissed, and that the judgment be otherwise affirmed.

JACKSON and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the finding and decision of the court below upon the petition of intervention is reversed and said petition dismissed, and the judgment is otherwise affirmed.

JUDGMENT ACCORDINGLY.