ANNA JOHNSON, APPELLEE, V. NEBRASKA BUILDING & IN-VESTMENT COMPANY, APPELLANT.

FILED NOVEMBER 13, 1922. No. 22107.

1. **Contracts: RESCISSION: PLEADING.** In an action to rescind a contract for fraud, a petition which sets out the facts from which a presumption of damage arises is sufficient to show injury to plaintiff by reason of the fraud.

2. **Evidence** examined, and found sufficient to support the verdict.

3. **Evidence: RESCISSION: PAROL EVIDENCE.** The parol evidence rule in actions to enforce a written contract is not applicable in an action to rescind the contract for fraud in procuring it.

4. **Corporations: RESCISSION: DEFENSE OF ULTRA VIRES.** Where a corporation has secured money of plaintiff by fraud, a plea of *ultra vires* is not admissible in an action to recover it.

5. **Appeal: FRAUD: INSTRUCTIONS: HARMLESS ERROR.** An instruction in an action for fraud which fails to state that plaintiff

must show he has been damaged, is erroneous. In this case the error was without prejudice.

6. **Corporations: Contracts: Ratification.** Receipt by plaintiff of dividends *held* not a ratification of the contract preventing rescission under circumstances detailed in the opinion.

Appeal from the district court for Lancaster county: Frederick E. Shepherd, Judge. *Affirmed.*

*Doyle, Halligan & Doyle* and *Good & Good,* for appellant.

*Stewart, Perry & Stewart, contra.*

Heard before Morrissey, C. J., Letton, Aldrich and Flansburg, JJ., Redick, District Judge.

Redick, District Judge.

Action to rescind a contract for the purchase of stock of defendant on the ground of false representations claimed to have been made which induced such purchase. Among the representations alleged as false were: That the defendant company was in a sound and prosperous condition; that its assets consisted principally of high class securities, mostly first mortgages on real estate; that the stock was worth $109 a share; and that defendant had provided for and would repay money received for stock with 7 per cent. interest after one year on 30 days' notice if purchaser desired. Plaintiff tendered return of the stock and demanded her money, which was refused.

Defendant by its answer admits the purchase of stock, alleges that the agreement therefor was evidenced by a written subscription contract containing, *inter alia,* provisions that the stock "will be subject to the regular resale provisions as provided in the by-laws of the company and printed on the reverse side of the application," and "no conditions, agreements or representations, other than those, shall bind said company." The resale provisions are, so far as material, that "it shall be the duty of the Lincoln Security Company (the stock selling agent of defendant) * * * to resell or take over such stock as

offered for resale upon such terms as said company shall deem to be for the best interest of the company and to resell such stock without any discrimination among stockholders; funds remaining for a period of three years will be credited with their proportionate surplus earn- ings of the company; if withdrawn within that period, 7 per cent. interest on the original investment will be the maximum earning of said stock." Defendant denies all fraudulent representations, or notice thereof, and alleges that its agent had no authority to make any representa- tions beyond those contained in the subscription con- tract, of which limitation plaintiff had notice; other de- fenses alleged will be referred to later on. Trial to a jury resulted in a verdict and judgment for plaintiff, and defendant appeals.

The errors assigned are: (1) Errors of law at the trial; (2) failure of plaintiff to state a cause of action; and. (3) insufficiency of the evidence to sustain the ver- dict. ·

Regarding the second assignment it is claimed the pe- tition is faulty in not alleging in so many words that plaintiff was damaged by the false representations; but the petition sets out representations of a character which, if false, would raise a legal presumption of damage. This is sufficient in an action to rescind. *Rihner v. Jacobs,* 79 Neb. 742.

Regarding the third assignment of error, the evidence is sufficient to support the verdict, if competent, and binding upon defendant. While the witnesses were not as clear and specific in their statements as could be de- sired, the witness Nelson testified in effect that the agent represented that the business of the company was erect- ing buildings, one-half or one-third to be paid for and the company take first mortgages for the balance; that its principal assets were first mortgages; that the com- pany had made money so that the stock in two years had become of the value of $109 a share (the price paid by plaintiff); that any time after one year, on thirty days'

notice, the money would be paid back. It appears from the evidence that during the year 1918 defendant company operated at a loss of about $134,000, but the books showed a profit of $402,211.95 by means of sales to hotel companies of properties purchased or built by defendant. A sample of these transactions is the Lincoln Hotel deal. Defendant bought this property in 1918 for $467,000 and very soon afterward turned it over to the Nebraska Hotel Company for $642,000, showing a book profit of $175,-000; taking in payment stock of the hotel company and a *second* mortgage for $300,000. The hotel company was affiliated with defendant company, which owned 80 to 90 per cent. of its stock. Although defendant's statement showed current assets December 31, 1918, of $926,-645.69, only $169,939.66 represented mortgages from persons or companies outside of affiliated corporations, and from the latter $586,252.06. Defendant at that time also held $610,975 par value of stock in Nebraska Hotel Company. It also appears that defendant's principal operations consisted of purchasing and selling buildings, rather than constructing them. There is considerable more evidence of the same nature, but the above is sufficient to show the falsity of the representations as to the nature of defendant's business and character of its assets.

The first assignment of errors at the trial presents the question upon which defendant chiefly relies. It is claimed that the provision in the contract of subscription, "no conditions, agreements or representations, other than those, shall bind said company," was notice of the limits of the agent's authority, and that the company was not bound by any other representations. This contention is based upon the idea that plaintiff's action is to enforce a contract to pay back the money, and that such an agreement cannot be proved by parol, in view of the terms of the subscription contract regarding a resale. But the action is one to rescind for fraud and the parol evidence rule is not applicable, as is well ex-

pressed by Flansburg, J., in *Schuster v. North American Hotel Co.,* 106 Neb. 679. Furthermore, this case does not rest solely upon a promise, but upon representations of fact, regarding the financial condition of the company and the nature of its business, which are matters generally within the scope of the agent's authority whose business it is to sell stock; and, in addition, there is ample evidence of actual authority in this case, as there is in evidence a prospectus of defendant delivered to plaintiff before the contract of subscription, containing, *inter alia,* the following:

"We make no loans on old properties, nor on any property which we do not build ourselves."

"Safety. The placing of a loan on a newly improved piece of real estate, on a conservative basis as to the market value, so arranged as to be reduced by a payment each month, is providing one of the safest investments known today.

"Newly improved high class real estate, with the improvements of the most modern class, the highest type of architectural design and construction, has no equal for security of the investment, when consideration of the earnings are taken into account.

"Considering the fact that our assets are chiefly just such securities, on which there is the very least element of chance of loss (our properties all being fully insured in both fire and windstorm insurance), coupled with the liberal earnings of our preferred shares, is the very reason why our shares are meeting with such ready sale.

"By confining our operations to the improvement of real estate and to buildings of the very highest type of structure known to modern science, we are keeping our operations within the limits of the most conservative business methods."

"We pay 7% on the money *invested* with us, paid semi-annually; and, in addition thereto, a share of the net profits of the company. *Provision is made for with-*

*drawal of your money after twelve months if you so desire."* (Italics are ours.)

"Our securities consist chiefly of mortgages on newly improved real estate."

The agent making the sale, while denying all false representations, admits making those contained in the prospectus, so, whether these representations are considered as made by the agent or the company itself, they are equally binding. Moreover, the last sentence of the "Provisions for resale" on back of subscription contract above quoted is open to construction, as it speaks of the amount to be credited in case "funds" are "withdrawn" —terms of very slight, if any, application to a "sale" of stock. We think, under the circumstances shown, that the limitation of the agent's authority was ineffective as applied to the representations contained in and based upon the prospectus. We conclude that the evidence of representations was competent and binding upon defendant. See *Schuster v. North American Hotel Co.,* 106 Neb. 679.

It is contended that the contract to repurchase the stock is *ultra vires,* and that to enforce it would interfere with the rights of other stockholders and creditors. The principle referred to has no application here. A corporation may not procure money by fraud and then plead *ultra vires* as a defense to repayment; the stockholders and creditors have no equity superior to plaintiff.

Defendant complains of the failure of the court to instruct the jury that before plaintiff could recover she must show that she was damaged by the fraud. Of course, it was necessary to show injury, and the jury should have been so instructed; but the court instructed that the representations must be proved, that they were false, and that plaintiff relied upon them and paid for the stock, and the evidence is conclusive that the stock was not of the character and value represented, and the error was not prejudicial.

Finally, it is urged that plaintiff lost any right to rescind because she accepted three dividends after knowledge of the fraud. The evidence shows that about July, 1919, two months after the purchase, plaintiff heard from several persons that "this company wasn't any good," but "I let it go until they stopped paying dividends," that it would have been all right if she got the dividends, and in July, 1920, she put the matter in the hands of Mr. Godfrey, a lawyer. With each dividend payment she received a letter and semi-annual statement, in which the business of the company was shown to be in thriving condition, containing such expressions as "The future of the company was never brighter, and we are glad you are in position to share in our prosperity which is your prosperity" (July 1, 1919), "Business is excellent," "Our prosperity is your prosperity" (January 1, 1920), "On January 1, 1920, the value of each share was increased to $112" (February 5, 1920) ; and many more highly colored statements, all of which undoubtedly had a tendency to allay plaintiff's suspicions and delay action upon her part. She never had any knowledge of the real facts until shortly before this suit was brought in October, 1920. We think that, by these acts of defendant, plaintiff was lulled into a belief of false security, and that, under these circumstances, the receipt of the dividends should not be considered a ratification of the transaction. *Rhines v. Skinner Packing Co.*, 108 Neb. 105.

Objections to instructions given and refused have been considered and we find no prejudicial error. Decree of district court is

AFFIRMED.