CHARLES KAMRATH V. F. T. GILBERT ET AL.: HATTIE KLUG RAKOWSKY ET AL., APPELLANTS: STATE BANK OF MADISON, APPELLEE.

FILED OCTOBER 25, 1929. NO. 26672.

R. J. Shurtleff and O. S. Spillman, for appellants.

Dowling, Thielen & Dougherty, for appellee.

M. B. Foster, for plaintiff, Kamrath.

Heard before GOSS, C. J., DEAN, GOOD, THOMPSON, EBERLY, and DAY, JJ., and REDICK, District Judge.

PER CURIAM.

In the beginning this action was brought to foreclose a real estate mortgage relative to which there is now no controversy. The issue in this appeal is between the appellants, Gustave Rakowsky and Hattie Klug Rakowsky, and the appellee, State Bank of Madison. The trial court found that the real estate which stood in the name of one Gilbert was in fact the property of Gustave Rakowsky and Hattie Klug Rakowsky, but that the bank was entitled to a lien upon it to the extent that it had loaned money to Gilbert upon his representation of ownership, supported by the land records of Madison county. In this respect the court found that the appellants were estopped to assert or claim any interest in the real estate involved against the interest of the Madison bank.

Since this is a suit in equity and triable *de novo* in this court, it is well to set out a statement of facts as found from the record. This case was previously argued before the commission and an opinion filed herein. In the original briefs and the brief for rehearing, the appellants complain of the application of the law to the facts in the case. They seem not to realize that the trial court and the commission found against their contention upon the question of fact.

The facts in the case are not so complicated as they are awkward of statement. Mrs. Rakowsky was the devisee under the will of her father of an undivided one-ninth interest in certain real estate. It was the desire of her husband to purchase the other eight-ninths interest in the property. To attain this end, he employed one Gilbert, and gave him a power of attorney, because he apprehended some difficulty in negotiating this deal with the relatives of his wife. On the day that the contract and power of attorney were made and signed, Rakowsky gave to Gilbert the sum of $5,200 and later, about the 14th day of January, 1927, gave to Gilbert the sum of $3,750. Rakowsky desired some evidence of the payments, and Gilbert gave him his note for those amounts. Gilbert purchased the interest of each of the seven adult

heirs, and obtained deeds from them, the deeds running to Gilbert. About February, 1927, Gilbert told Rakowsky that he had made such arrangements that he would be able to purchase the minor's share in the estate, being one-ninth, and that it would be necessary for Rakowsky and wife to convey to him the interest that Mrs. Rakowsky had in the estate, which was done; Gilbert giving his note for the same, $950. All of the property stood in the name of Gilbert except the one-ninth interest of the minor. Gilbert leased the farm for one year to a brother-in-law of Rakowsky, and moved into the house in Madison. Everything was done to indicate to the public generally, and the relatives in particular, that Gilbert, and not Rakowsky, was the purchaser of this property. Rakowsky and his wife gave Gilbert a deed to their own interest in the property in order that he might show it to the mother of the minor as an inducement to her to consent to the sale of the minor's interest. We think it can fairly be deduced from the evidence that this was the real reason for the secrecy and the concealment involved in the transaction.

Finally, Rakowsky became apprehensive of Gilbert, and impatient to have this purchase completed and the land deeded to him. Gilbert was somewhat elusive, but on August 12, 1927, they entered into an escrow agreement, whereby Gilbert and his wife executed a warranty deed to Rakowsky and his wife, placed in the Nebraska State Bank at Norfolk, Nebraska, to be delivered to Rakowsky when the minor heir's interest was secured, and upon the payment by Rakowsky to Gilbert of the remainder due him on completion of title and return of Gilbert's promissory notes heretofore mentioned.

In the meantime, Gilbert being in possession of this real estate, with the title in him of an undivided eight-ninths interest, borrowed money from the appellee bank upon a series of notes. Gilbert represented to them that he was the owner of an undivided eight-ninths interest, and an inspection of the records by the bank in the office of the register of deeds for Madison county supported his representation.

Rakowsky contends that sometime after August 12, 1927, he notified the bank of his interest in this real estate. At that time all the loans had been made except the last one, which was made by the bank to supply money to purchase the one-ninth interest of the minor heir, and the bank held $946 of the $1,575 loan to pay for this minor's interest. This question as to whether Rakowsky gave the bank notice at this time that Gilbert was simply his trustee, and had no interest in the property except as said trustee, was resolved as a question of fact against the appellants. We make the same finding in this particular. It is apparent that Rakowsky was not at the bank to give information, but to acquire information. As a part of his distrust of Gilbert, he wanted to ascertain if he had mortgaged the land. The purpose of this trust had not yet been accomplished, that is, acquisition of the minor heir's interest. He was beset by two fears; on the one hand, that Gilbert might not handle the transaction well, and, on the other hand, that he might not make an advantageous purchase, as schemed, of the minor's one-ninth interest. He thought he had safe-guarded his rights by the escrow deed. It was not until October 13, 1927, that he proclaimed to the world the truth about the transaction by filing an affidavit with the register of deeds. The cashier of the bank denies that Rakowsky told him of the situation. We conclude that he did not give such notice that would put the bank upon inquiry. We find from a careful examination and consideration of the record that the bank did have notice on October 8, 1927, when, in a conference between Gilbert and the cashier of the bank and the attorney for the bank, the attorney, in the words of the cashier, "didn't mince words; he told Mr. Gilbert what he thought of him." That same date Gilbert confessed judgment in favor of the bank, and subsequently Rakowsky gave the notice by affidavit. At this time Gilbert had on deposit in said bank the sum of $436.52.

Certain propositions have been cited by counsel which are fundamental in their nature and need no discussion in this opinion. However, in the case of *Roy v. McPherson*, 11

Neb. 197, which is not only an early case but has been a. ruling case in this state upon this character of trusts, it is held, in substance, that, where the title to real estate is placed in another who obtains credit on said apparent title, the real owner will be estopped from setting up his claim against one who has advanced money, in good faith, upon the strength of the apparent title. This is supported in the cases of *Early v. Wilson,* 31 Neb. 458, *Hoagland Bros. v. Wilson,* 15 Neb. 320, and *Laing v. Evans,* 64 Neb. 454.

The rule is well settled, in this and practically all other jurisdictions, to the effect that—"Where one of two inno-cent persons must suffer through the misfeasance of the. agent of one, that one must suffer who has placed the agent in a position to perpetrate the fraud complained of." *Reh-meyer v. Lysinger,* 109 Neb. 805; *Bull v. Mitchell,* 47 Neb. 647. The *Rehmeyer* case was cited with approval in the case of *Taylor v. Flodman,* 109 Neb. 812. See, also, *Deleski v. Peters Trust Co.,* 115 Neb. 547, wherein it is stated: "Where one of two innocent parties must suffer a loss, he whose negligence caused the injury should bear the loss." This is well established and a universal rule.

The determination, then, must be upon the evidence. If the credit was given to Gilbert, who represented to the bank that he was the owner of these premises and other property, and the bank investigated and found his representations to be true, as shown by the record, and that Rakowsky knew at the time that Gilbert did have the record title to the premises, but no notice of Rakowsky's interest therein came to the knowledge of the bank until the loans had all been made, then the judgment against Gilbert would become a lien upon the premises.

On the other hand, the bank would not be entitled to a lien on the premises for any money loaned after the in-formation had been received. If the testimony of Rakow-sky be true, then there was enough in his notice to Taylor to put the bank upon inquiry, which, if pursued, would show who was the real owner of the premises. On the other hand, if the testimony of the cashier was true, Rakowsky

had no remedy and his interest in the premises would be subject to the lien of the bank.

The principles involved herein were thoroughly discussed in the opinion of *Hansen v. Berthelsen*, 19 Neb. 433, at page 438 of the opinion, and the court, in part, said: "As between Love and the plaintiff the latter was most to blame, as he had placed in the hands of another the means for perpetrating a fraud and permitted such means to remain in her hands after he knew, or had reason to know, that the power was liable to be abused, hence the equity of Love, for the money paid by him, is superior to that of the plaintiff." Several cases are cited in support of that proposition. Among others is the case of *Resor v. Ohio & M. R. Co.*, 17 Ohio St. 139. In the case last cited the vendor put the vendee in possession and placed in his hands a deed of the land sold, with an agreement that it should not be considered delivered or become effectual until the purchase money was paid. The vendee subsequently put the deed on record without paying the purchase price, and mortgaged the lands to *bona fide* mortgagees for value and without notice. The court held that as against the mortgagees the vendor could not assert a claim to the land.

In the instant case Rakowsky knew when his wife gave the deed in February, 1927, that Gilbert was taking title to the premises in his own name. He remains silent as to this until he gave what he claims was a notice to the bank in August, the exact date of which he is not certain. His testimony as to that transaction is vague, uncertain and indefinite. He went to the bank for the purpose of seeing about a lease of the premises. The evidence discloses that until that time Radowsky had made no effort to assert his title to the premises. He had allowed Gilbert to place the deed from the heirs upon record, in which Gilbert was grantee. He had been permitted by Rakowsky to lease the farm and to move with his family into the town home. It was not shown that the bank had any notice of any kind, actual or constructive, of the interest of Rakowsky, unless it was in August, 1927. The bank had taken all the necessary pre-

cautions possible in order to ascertain whether the title stood in Gilbert. It has been stated the bank should have taken a mortgage on this property to secure its claim. We are not concerned with that phase of the question. The bank did not take a mortgage and, under the law governing this class of cases, was not required to do so in order to acquire a priority over Rakowsky to the extent of the money which it innocently and in good faith loaned to Gilbert.

The trial court found by his findings and decree that the testimony of the cashier, Mr. Taylor, was true, and that there was no notice given, as related by Rakowsky, and contradicted by the cashier. And we believe the circumstances would bear out that conclusion, as the bank afterward loaned a large sum in addition to the indebtedness Gilbert had already incurred. While the conclusions of the trial court are not binding on this court and the cause should be tried *de novo* here, nevertheless, we are entitled to give some consideration to the court's findings of fact, as he was in a better position to determine the facts than are we. In the case of *Brown v. Stroud & Co.*, 112 Neb. 210, the court in the opinion, at page 216, say: "The findings of a trial judge, who made a thorough and painstaking original investigation, although no longer conclusive, are entitled to respectful consideration, if not to considerable evidential weight, in this court"—citing *Corn Exchange Nat. Bank v. Jansen,* 70 Neb. 579.

Counsel for appellants has cited the case of *Rihner v. Jacobs*, 79 Neb. 742, to support the contention that, where the acts were induced by fraud, no estoppel can arise. A careful reading of the cited case will disclose that the same condition did not exist in that case as in the instant case. In the *Rihner* case the deed was obtained by fraud; in the instant case Gilbert, while the power of attorney and contract did not authorize him to do so, took the title to the premises in his own name, but that proceeding was ratified by Rakowsky and this ratification and his remaining silent for several months thereafter was the potential cause of this litigation. Gilbert's fraud was not directed to Rakowsky but to

the bank; he committed no fraud by misrepresentation as against appellants in the purchase of the lands; he fulfilled his contract with his principal, except as modified by acquiesence of Rakowsky. The cases of *Mulligan v. Snavely*, 117 Neb. 763, and *Deleski v. Peters Trust Co., supra*, are contrary to counsel's reasoning.

When the appellee bank learned of the fraud of appellants' agent, it should not have allowed the agent to draw upon it further, but should have applied his remaining deposit to its judgment against him. A bank has authority to apply its debtor's deposit to the debt. *State v. Farmers & Merchants Bank*, 114 Neb. 378. And it is generally required to do so when it knows that such action is necessary for the protection of a third person. 3 R. C. L. 596; 7 C. J. 657. The appellee had the means of protecting itself to the extent of the wrongdoer's remaining deposit; it cannot claim to have incurred that part of the loss on account of reliance upon the agent's ownership of appellants' land. The deposit so available to the bank was $436.52. This amount should be deducted from the account as of October 8, 1927, with proper allowances for interest.

Coming to the conclusions that we do, the judgment of the trial court is affirmed as modified by the deduction of $436.52 from the account as of October 8, 1927.

AFFIRMED AS MODIFIED.