FEDERAL TRUST COMPANY, APPELLEE, V. EMMA DAMRON ET AL., APPELLANTS: HARRY E. FARQUHAR ET AL., APPELLEES.

FILED APRIL 7, 1933. No. 28334.

*Francis V. Robinson* and *Herman Ginsburg,* for appellants.

*John J. Ledwith* and *Beghtol & Foe, contra.*

Heard before GOSS, C. J., DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

EBERLY, J.

This is a proceeding under the Nebraska uniform declaratory judgments act. The Federal Trust Company filed a petition in the district court for Lancaster county asking for a declaration determining its rights and duties as to the proceeds of a life insurance policy of $50,000 issued by the Aetna Life Insurance Company of Hartford, Connecticut, covering the life of Corl E. Reynolds, now deceased, and late president of the petitioner.

This pleading also sets forth the following allegations, among others: (1) That this policy was applied for by the assured on June 12, 1926, bears date July 2, 1926, was delivered July 9, 1926, and required payment of premiums to be made monthly. This policy also provides: "During the lifetime of the insured, the right to receive all cash values, loans and other benefits accruing hereunder, to exercise all options and privileges described herein and to agree with the company to any change in or amendment to this policy shall vest alone in the insured (herein called the life owner) ;" and further provided in substance that the "beneficiary" may be changed as often as desired upon written request of assured, etc.; and that the amount specified in the policy shall be payable immediately upon receipt at the home office of the insurer of due proof of death of the insured, to the beneficiary, Federal Trust Company, of Lincoln, Nebraska, as trustee. It was further stipulated in the policy: "The Aetna Life Insurance Company of Hartford, Connecticut, shall not be responsible for the application or disposition of the proceeds of this policy by the trustee, and payment to and receipt by the trustee shall be a full

discharge of the liability of said insurance company hereunder."

(2) That on July 9, 1926, this policy was delivered to and accepted by the insured (also hereinafter designated as grantor), and the first month's premium paid to the insurer out of insured's own funds.

(3) That on the 9th day of July, 1926, an agreement in writing was executed by Corl E. Reynolds in his own behalf, and by the "Federal Trust Company of Lincoln, Nebraska, Trustee, by C. E. Reynolds, President. Attest Roscoe J. Slater, Secretary." This agreement, revokable at the option of the grantor, provided that the trust company on death of insured should collect such insurance money and, less collection fees, etc., pay certain indebtedness therein referred to and described, and the balance remaining to be then considered as part of the assets of the insured's estate. It was provided in the sixth paragraph of this agreement: "The grantor agrees to pay all premiums on said policy during the continuance of said trust, and it is further agreed that the trustee shall in no way be bound to pay such premiums or see that the premiums of such insurance are kept in force. The trustee shall have no duty in respect thereto until it receives the proceeds thereof at the maturity of said policy."

On April 22, 1927, another agreement, expressly made revokable at the option of grantor, was entered into in the same manner as the agreement of July 9, 1926. This agreement, which was substituted for, and in effect annulled the agreement of July 9, 1926, provided for the collection of the insurance money by the Federal Trust Company of Lincoln, as trustee; directed its use in the discharge of certain obligations of the grantor, and the payment by trustee of the balance of the fund then remaining to the representatives of the grantor's estate. Further this instrument provided: "7th. The grantor agrees to pay all premiums on the said policy during the continuance of this said trust or cause same to be paid

and it is further agreed that the trustee shall in no way be bound to pay such premiums or see to it that said insurance is kept in force. The trustee shall have no duty in respect thereto until it receives the proceeds thereof at the maturity of said policy."

On August 21, 1930, the last trust agreement in writing, which is the agreement in controversy in this case, was made. It was signed by Corl E. Reynolds in his own behalf, and the "Federal Trust Company, by C. E. Reynolds, President," in the presence of two witnesses who executed the document as such on the part of the trust company. (Corl E. Reynolds and "C. E. Reynolds, President" are one and the same person.) This instrument recites that the Federal Trust Company has paid all the premiums to date on said policy of life insurance; expressly cancels the trust agreement of April 22, 1927; provides for the collection of the $50,000 policy by the Federal Trust Company as trustee; and provides: "2d. The trustee shall, after paying any necessary expenses incurred in the collection of said insurance, repay to the Federal Trust Company all advancements made by it to pay premiums on said policy of life insurance, together with interest on each advancement from the date of the making thereof to the date of the death of the grantor at the rate of six per cent. per annum, the repayment of said premiums and the interest thereon to be a first lien and claim against the proceeds of said policy of life insurance;" also provides for the payment of certain unpaid indebtedness of the insured existing at the time of his death, and for the loan of the remaining funds, after making the above payments, to the Federal Trust Company upon certain conditions without interest. for the period of two years; and further recites: "At the end of said period of two years, or sooner if the control of said Federal Trust Company shall change as hereinbefore provided," the trustee shall pay certain amounts thereof to individuals specified and described, and in the event the sum for distribution is more than sufficient to pay

distributees in full, then the balance remaining shall be paid said Federal Trust Company absolutely.

The petition further states, and the evidence is undisputed to the effect, "that said Corl E. Reynolds died on the 27th day of December, 1930, and said Aetna Life Insurance Company, on proof of loss being duly made by plaintiff, paid on January 17, 1931, the sum of forty-seven thousand nine hundred thirty-four and 66/100 dollars ($47,934.66) to the plaintiff as trustee in full of the obligation of said policy."

The petition also set forth that at a duly called special stockholders' meeting of the Federal Trust Company, held on April 14, 1931, a resolution was duly adopted by the stockholders thereof which ratified and confirmed in all respects the trust agreement of August 21, 1930, and this corporation was thereby directed to carry out the terms and conditions thereof as therein provided.

To this petition John J. Ledwith and other stockholders, constituting a minority of the outstanding stock, filed a pleading in the nature of an answer and cross-petition. Essentially all the allegations of the petition leading up to and including the receipt of the fund in controversy by the Federal Trust Company are admitted. The validity of the trust agreement of August 21, 1930, and of the ratification thereof by the stockholders in the meeting of April 14, 1931, is challenged and denied. It is alleged that such action of the stockholders was wholly due to the fact that stock in the trust company, owned by Corl E. Reynolds in his lifetime, which constituted more than 50 per cent. of the outstanding stock thereof, was by his executors, at such meeting, without authority, wrongfully and illegally voted for the adoption of the resolution of approval and ratification; and that without such illegal votes such resolution would not have been adopted. It is also alleged that the trust fund in controversy was, in his lifetime, purchased by Corl E. Reynolds, the president and managing officer of the Federal Trust Company, a corporation, as a life insurance policy covering his own

life, for the use and benefit of the corporation, and was paid for by this company, and is its exclusive property. As relief, these minority stockholders ask that the stockholders' resolution of ratification and affirmance adopted in the manner set forth on April 14, 1931, as well as the trust agreement of August 21, 1930, be declared ineffectual, null and void; that the Federal Trust Company of Lincoln, Nebraska, be declared the sole owner of·the fund in controversy; and that all other persons be enjoined from asserting a right thereto.

To the petition, and the pleading of the minority stockholders, the beneficiaries designated as such in the trust agreement of August 21, 1930 (exclusive of the petitioner) joined with the owners of a majority of the stock of the corporation, and by their answer admitted the allegations of the petition, but tendered issues as to allegations of fact and law set forth and relied upon by John J. Ledwith and the minority stockholders associated with him in their answer and cross-petition hereinbefore set out. By way of prayer they asked that the Federal Trust Company be directed and instructed to recognize and enforce each and every one of the provisions of the· agreement of August 21, 1930 (the trust agreement in suit), and that all other defendants herein be enjoined from interfering in any manner with the strict enforcement thereof. To this pleading replies were filed.

The trial in the district court resulted in a finding and judgment for John J. Ledwith and the minority stockholders associated with him, determining, specially, "that the resolution of ratification (of April 14, 1931) * * * is null and void; * * * that the Federal Trust Company, as trustee, pay the fund. in question, together with interest thereon, to the Federal Trust Company as sole owner thereof and not subject to the conditions and obligations of the trust agreement herein in question."

From the order of the trial court overruling their motion for a new trial, the beneficiaries appeal.

The trust company, it will be remembered, is a Nebraska corporation. The articles of incorporation form-

ing a part of the contract of membership is not found in the record. However, it is expressly empowered by statute, "To accept and execute all such trusts as may be committed to it by any * * * person;" to "take, accept and hold * * * by gift, grant, assignment, transfer * * * any * * * personal property in trust;" to "care for, manage and convey the same in accordance with such trusts;" and "perform any and all such trusts," to "loan money upon * * * collateral security (within defined limitations);" and "to buy, hold and own and sell * * * warrants, bills of exchange, notes, mortgages and other investment securities, negotiable and nonnegotiable;" and lastly to "perform all acts and exercise all powers connected with, belonging to or incident to, or necessary for the full complete exercise and discharge of the rights, powers and responsibilities hereinbefore granted, and all provisions of this article shall be liberally construed." Comp. St. 1929, sec. 8-206.

Under the terms of the statute from which the foregoing excerpts are quoted, the rights and powers of petitioner "as trustee" upon the death of the insured, to accept and receive the proceeds of a life insurance policy on his life, payable to it as trustee, is unmistakably conferred. Its corresponding duty to execute and perform such trust as validly declared and directed by the settlor thereof is equally clear and undisputable.

Corl E. Reynolds in his lifetime was the owner of 504 of the 1,000 shares of issued stock of the Federal Trust Company. He was its president and managing officer. From facts in the record it may be inferred that he largely dictated the policies that controlled its business affairs, to such an extent that this institution may be justly termed a "one-man company." From the beginning to the end of the transaction or transactions out of which this litigation has grown, his was the responsible, controlling, and dominating mind. Yet the record before us, both pleadings and evidence, contains nothing that challenges his integrity or casts the slightest doubt upon

his honesty of purpose, but on the contrary it establishes his entire good faith, and fully negatives any participation on his part in actual fraud, or fraudulent conduct in the business which forms the subject of investigation in this suit.

On August 20, 1930, Corl E. Reynolds was suffering from sarcoma, and since the previous May had been confined to his home. He was preparing to leave Lincoln in search of medical aid.

The insurance policy, the basis of the present suit, had been in force 38 months, and an equal number of monthly premiums had been paid. This policy, together with the first trust agreement of July 9, 1926, and the second trust agreement of April 22, 1927, which superseded it, were then reposing in the "trust files" of the Federal Trust Company. The first five monthly premiums on this policy had been paid from the insured's own funds; the subsequent payments for that purpose had been remitted by his order from the moneys of the trust company; and from the same source he had been reimbursed for the five monthly premiums paid thereon by himself. The books of the trust company covering these transactions are not before us, but there is no complaint that they do not correctly reflect these transactions; neither is concealment charged. From the evidence it affirmatively appears that the trust files, as well as the books of the trust company, were at all times open to reasonable inspection, not only by executive officers but by directors and stockholders as well. But in view of the admitted facts, whatever the form of the book entries may have been, the transactions themselves, to the extent of the money paid out for premiums, created a debtor and creditor relation between Reynolds and his trust company. The solvency and financial responsibility of Reynolds is not questioned.

An officer of a corporation "is bound to account to the corporation for all moneys that come into his hands by virtue of his official position, as well as for sums of

money which he has wrongfully accepted from the funds of the corporation." 14A C. J. 109.

On August 20, 1930, the sick man called to his home H. B. Reynolds, his brother, who was then and for many years had been a director and stockholder of the Federal Trust Company. To this brother was dictated the substance of the document which appears in this record as the trust agreement of August 21, 1930, and which supersedes the agreement of April 22, 1927. This proposed agreement, typewritten in temporary form on yellow paper, was immediately submitted to John J. Ledwith, a practicing attorney at law, at his office in Lincoln. Mr. Ledwith, after careful examination and deliberate consideration, approved the proposed instrument as valid and as "a fine agreement," and made recommendations as to the manner and form of execution, all of which were complied with. In reliance upon this opinion, and in conformity therewith, the trust agreement of August 21, 1930, was thereupon executed. On December 27, 1930, Corl E. Reynolds died.

Now, Mr. Ledwith in this court, in his capacity as a stockholder in and a director of the same trust company, as a party to the joint answer and cross-petition filed herein on behalf of the minority stockholders thereof, and as the sole attorney for those so associated with him, challenges the validity of the instrument he formerly approved and the transaction it evidences.

But, he was such director and stockholder when his former opinion of approval was rendered, reliance on which resulted in the execution of the trust agreement of August 21, 1930. And it is to be remembered that prior to this last agreement the Federal Trust Company, due to the terms of the life insurance policy from which the fund here in litigation was derived, had no assurance of receiving from Corl E. Reynolds more than the amount of money which had been employed in the payment of the monthly premiums with legal interest thereon. These premiums on August 21, 1930, totaled $4,180, exclusive

of interest, and the cash value of the $50,000 policy was then but $950.

By the execution of the approved agreement of August 21, 1930, the repayment of the advances made by the trust company with interest at 6 per cent. was made a first lien on the proceeds of the life insurance policy payable on the death of the insured; and provisions were also incorporated in this instrument for the benefit of the trust company, through which it will receive as a gift more than $7,000, in addition to the repayments directed.

But, not satisfied with these returns, the minority stockholders in the present proceeding seek to have appropriated to the private use and benefit of the stockholders of the Federal Trust Company the sum of $47,934.66, being the entire proceeds of the $50,000 life insurance policy which, under its terms, was paid to that corporation "as trustee," and also seek to have the provisions of the trust agreement of August 21, 1930, adjudged void and of no effect.

As to Mr. Ledwith, it is thought that the applicable rule is: An attorney, after receiving the confidence of a client, may not enter the service of others whose interests are adverse to such client, in the same subject-matter to which the confidence relates, or in matters so closely allied thereto as to be, in effect, a part thereof. 1 Thornton, Attorneys at Law, 307.

It is clear that the contract here in suit was executed after the approval of Mr. Ledwith, and in reliance upon his advice. As to objections he now urges, he was silent then. Corl E. Reynolds is now silent in death, and his power to correct an honest mistake, if mistake there was, has ceased. In good conscience, in view of the surrounding circumstances, the silence of the attorney, relied upon in the transaction we now consider, must remain unbroken, for this, a court of equity and conscience, may not hear complaint in his behalf that should have been made, if at all, when Reynolds yet lived.

"A man shall not be allowed to blow hot and cold—to affirm at one time and deny at another—making a claim on those he has deluded to their disadvantage, and founding that claim on the very matters of the delusion." Broom's Legal Maxims (9th ed.) 116. See, also, *Goble v. O'Connor*, 43 Neb. 49.

The contention of the minority stockholders that, due to uncertainty and lack of mutuality, the trust agreement of August 21, 1930, is void cannot be sustained. The insurance moneys covered by this contract were actually accepted and received by the proper officers of the trust company. The business was of a nature which the statute expressly empowered it to transact. The receipt of the proceeds of this insurance policy by the company and the agreement now in controversy were expressly and formally called to the attention of the board of directors of the trust company at their regular January meeting following its receipt. Later, special directions were made by this board in reference to the keeping and use of this money by the trust company. Following this, at a special meeting of the stockholders duly called to consider the matter, and after proper explanations as to the facts of the transaction, it appears that, while there was a divergence of views as to the ultimate disposition of the fund, the action of the executive officers in accepting and receiving the proceeds of the life insurance policy under the terms of the policy "as trustee" was not even criticized, and by fair implication almost unanimously approved. The beneficiaries of the contract were also ascertainable at the time the money was received by the trust company. The conclusion therefore follows that an enforceable trust was thereby created.

"Wherever one person has money to which in equity and good conscience another is entitled, the law creates a promise by the former to pay it to the latter and the obligation may be enforced by assumpsit." *Estate* of *Devries v. Hawkins*, 70 Neb. 656.

"Where a life policy, payable to a certain person as trustee, discloses neither the terms of the trust nor the

beneficiary, the declarations of the trustor, parol as well as written, are admissible to establish the beneficiary and the terms of the trust." *Kendrick v. Ray,* 53 N. E. 823 (173 Mass. 305). See, also, *Crowley v. Crowley,* 72 N. H. 241.

In *Estate of Devries v. Hawkins, supra,* a parol declaration was held sufficient, in connection with the surrounding circumstances, to identify the beneficiary and establish the terms of the trust.

But this written instrument, as we have seen, was also executed by an officer of the trust company. These facts invoke the rule: "If * * * an officer of a corporation, or other person, assuming to have power to bind the corporation by a given contract enters into the contract for the corporation, and the corporation receives the fruits of the contract, and retains them after acquiring knowledge of the circumstances attending the making of the contract, it will thereby become estopped from afterwards rescinding or undoing the contract. In other words, by retaining the fruits of the unauthorized contract with knowledge of the circumstances which entitle it to its election either to affirm or disaffirm it, the corporation ratifies the contract and makes it good by adoption." 3 Thompson, Corporations (3d ed.) 698.

"A corporation cannot be heard in retaining the fruits of an unauthorized contract to advance the defense of *ultra vires* when sued on the contract, especially when the contract is an entirety and indivisible. Then every proposition therein contained must stand or fall together." *Griffin v. Bankers Realty Investment Co.,* 105 Neb. 419. See, also, *Alexander v. Culbertson Irrigation & Water Power Co.,* 61 Neb. 333; *Sturdevant Bros. & Co. v. Farmers & Merchants Bank,* 62 Neb. 472; *Johnson v. Nebraska Building & Investment Co.,* 109 Neb. 235.

In addition, it may be said the petitioner "as trustee" not only received, and has since retained, the insurance moneys covered by the foregoing trust agreement, but by the payment "as trustee" therefrom to itself in its indi-

vidual capacity of the sum of $5,930.70 and also payment therefrom made to certain other beneficiaries of said trust, all as required by the terms thereof, has brought itself squarely within the rule announced by this court in *Miles v. Miles*, 120 Neb. 436, viz.: "A trustee, accepting a trust, receiving and holding the trust property, will not be permitted to set up a claim of title in himself to such property."

It follows that the so-called trust agreement of August 21, 1930, considered as a unilateral instrument executed by Corl E. Reynolds alone as trustor, as a declaration of trust in connection with the payment and receipt of the insurance by the trust company, affords ample evidence to establish the creation of the trust, to identify the beneficiaries, and defines and enumerates the duties and obligations which its terms require to be performed.

We conclude that, in view of the facts of this case, the trust agreement here in question is to be deemed in all respects valid and enforceable, and that its several terms should be strictly carried out and performed, and that the district court erred in the judgment and decree entered.

The judgment of the district court is therefore reversed and the cause remanded, with directions to enter a decree in accordance with this opinion and as prayed by the majority stockholders.

REVERSED.