### In re SHOEMAKE.

S. C. B. D. 113. April 17, 1934.

A. W. Rigsby, for State Bar.

Ceph Shoemake, pro se.

McNEILL, J. We review the recommendations of the Board of Governors that Ceph Shoemake, a member of the bar, be disbarred from the practice of law in this state.

On August 22, 1932, a complaint was filed before the administrative committee for the sixth section of the State Bar charging respondent for failure to remit the proceeds which he had received from an account which had been forwarded to him for collection. It appears that respondent had received two checks and cash totaling the sum of $100 in settlement of said claim, and had appropriated the same to his own use. After the charges had been preferred, respondent forwarded the $100 to the forwarding agent.

The administrative committee was divided in its opinion as to the character and extent of the penalty to be applied and reached no definite conclusion. The Board of Governors made a finding that respondent was guilty of violating the oath taken by him on admission to the bar, and concluded that he is unfit, unsafe, and untrustworthy to be intrusted with the powers, duties, and responsibilities of an attorney, and that by reason of being guilty of embezzlement of funds of his client recommended that respondent be disbarred from the practice of law in this state.

Such conduct is not conducive to the profession of law. If such practices were rife in this profession, short shift should be made of those engaged in such tactics. It leads to falsities, disloyalties, and slander on the profession, and encourages others to speak disparagingly and evil of the law and of the the courts. The courts have an inherent power over attorneys at law as officers of the court.

In the case of State ex rel. McCormick v. Winton, 11 Ore. 456, the Supreme Court of Oregon said:

"At common law, attorneys were, as now, under the statute, officers of the court; and as such they were liable to be punished in a summary way, either by attachment or having their names struck out of the roll of attorneys, for any ill practice attended with fraud and corruption, and committed against the obvious rules of justice and common honesty. (Bacon's Abridg. 'Attys.' 474.) This is an inherent power residing in the court without the aid of any statutory enactment. The exercise of the power may be, as it often is, regulated by statute, but the statute does not create it. Its existence is necessary and incidental to the court, for its own protection, to secure the proper administration of justice, to maintain the prestige of the profession for integrity, to conserve the public good, and to protect clients from malpractice attended with fraud and corruption. (Ex parte Smith. 28 Ind. 47; Penobscot Bar v. Kimball. 64 Me. 140; Fletcher v. Daingerfield, 20 Cal. 427; In re Woolley, 11 Bush [Ky.] 95.) It is, therefore, laid down by the text-writers upon this subject as deducible from the practice and decisions of the courts in such cases, that a court has the inherent right to exercise this summary jurisdiction over its attorneys as officers of the court, to require and compel them to deal justly and honestly with their clients, and to punish them by fine and imprisonment for contempts of misconduct in their office, and, in cases where the malpractice or misconduct in their professional capacity showed them to be unfit persons to practice the law, to strike their names from the roll. (I Field, Prac-

tice, 89 [Ed. 9]; Archibald's Practice, 148 Chitty's Ed.)"

The respondent offered no testimony in this case. No briefs have been filed. However, respondent, on or about December 10, 1932, subsequent to the preferment of the charges against him, forwarded the full amount collected to the Martindale Mercantile Agency. During the meeting of the administrative committee respondent phoned to one of the members making the statement that he would not appear by reason of the fact that it would be embarrassing. In one of the letters written by respondent to Mr. W. C. Caudill, who prosecuted the matter before the administrative committee, appears the following:

"I have asked no lawyer to represent me. I have done wrong and I know it and want to right the wrong. * * *"

This is a frank admission. There is no other indiscreet act of respondent in reference to the practice of his profession. This court cannot condone his want of good faith and fidelity in dealing with his client. The privilege granted to him in being a member of the bar has been abused. A disregard has been made of the required oath of an attorney. Such misconduct prompts discipline on the part of the court. Such practice should be stamped in no uncertain terms with disapproval. However, in view of the frank avowal of the wrong committed, the restitution of the amount collected, and the absence of any other indiscreet and questionable practices, we conclude that respondent should be suspended from the practice of law in this state for a period of six months from the delivery of this opinion. It is so ordered.

CULLISON, V. C. J., and ANDREWS, SWINDALL, OSBORN, BAYLESS, and BUSBY, JJ., concur. RILEY, C. J., absent. WELCH, J., not participating.