No. 40,790

LIZZIE WILSON, J. R. MAYS, SR., and NAOMI SEVIER, *Appellants*, MYRTLE BROWN and MILTON BROWN, *Plaintiffs*, v. EDWARD WAHL, THE CITY OF LYONS, KANSAS, a Municipal Corporation, and BRONCE JACKSON, City Attorney, of the City of Lyons, Kansas, *Appellees*.

(322 P. 2d 804)

Opinion filed March 8, 1958.

*Frederick Woleslagel* and *Arthur C. Hodgson,* both of Lyons, argued the cause and were on the briefs for the appellants.

*Bronce Jackson,* of Lyons, argued the cause, and *Edward Wahl,* of Lyons, was with him on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: This case presents a question of professional ethics on the part of an attorney.

On the night of April 24, 1954, a store building in the city of Lyons, owned by Roy and Lulu Avery, was struck by lightning, resulting in an explosion and fire. The Averys brought suit against the city to recover damages, their theory being that the explosion and fire were caused by the presence of natural gas in and under the building which had leaked from defective gas mains owned by the city. They recovered a judgment. On appeal by the city we reversed with directions to grant a new trial. (*Avery v. City of Lyons,* 181 Kan. 670, 314 P. 2d 307.)

Lizzie Wilson, Myrtle and Milton Brown, J. R. Mays, Sr., and Naomi Sevier were tenants in the Avery building and they sustained property damage as a result of the fire. In June of 1954 Wilson, the Browns and Mays contacted Edward Wahl, a practicing attorney of Lyons, concerning their claims against the city, and he prepared a statutory (G. S. 1949, 12-105, since amended—see G. S. 1957 Supp. 12-105) claim for each and which each filed with the

city clerk. Naomi Sevier also filed a claim against the city but Mr. Wahl had nothing whatever to do with its preparation.

In due course each of these four claims was disallowed.

The Avery case against the city was filed in the summer of 1955, whereupon the city requested Mr. Wahl to assist Bronce Jackson, the city attorney, in the defense of that action.

In about March, 1956, Wilson and Mays inquired of Mr. Wahl whether he could handle their proposed actions against the city but he informed them that due to his participation in the defense of the Avery case he would not be able to represent them.

In March and April of 1956 Wilson, the Browns, Mays and Sevier filed separate actions against the city, being represented by counsel other than Mr. Wahl. We are advised that in each of these four cases timely pleadings were filed by the city through Mr. Jackson as city attorney, and Mr. Wahl as co-counsel.

On June 2, 1956, Wilson, the Browns, Mays and Sevier filed the instant action against Mr. Wahl, the city of Lyons, and Mr. Jackson, as city attorney, in which they sought to enjoin the city, and Mr. Jackson, as city attorney, from associating Mr. Wahl in the defense of their separate damage actions against the city, heretofore mentioned, and to enjoin Mr. Wahl from participating as counsel in behalf of the city in the defense of those actions on the ground that, as heretofore related, he previously had "represented" Wilson, the Browns and Mays in the preparation of their statutory claims against the city, and that further participation by Mr. Wahl in the defense of their separate actions would constitute a violation of certain canons of professional ethics, hereafter mentioned.

The three defendants filed an answer in the nature of a general denial, and with respect to Mr. Wahl the answer contained the following:

"Defendant, Edward Wahl, admits that he did, during July, 1954, prepare and formulate the typewritten claim statements for the plaintiffs Lizzie Wilson, at the request of her son, Arthur Wilson, and for the plaintiffs Myrtle Brown and Milton Brown, and J. R. Mays Sr., without charge or remuneration, which claim statements were then delivered to these plaintiffs.

"Defendant, Edward Wahl, specifically denies that he was retained as attorney by any of the plaintiffs to prosecute any claim or action against the City of Lyons, Kansas, or that he obtained or received any facts or information from any of the plaintiffs concerning any cause of action against The City of Lyons, Kansas, or pertaining to any cause of action on the part of any of the plaintiffs, except only the list of articles claimed to be damaged from which the claim statements were prepared and which claim statements have been made a public record by these plaintiffs."

On October 22, 1956, the matter came on for hearing, at which time the court heard evidence, a brief summary of which is contained in the court's decision, which follows:

"Now, on this 2nd day of March, 1957, being an adjourned day of the January, 1957, term of this court, this case having been argued before the court heretofore at which time testimony of witnesses was introduced; the court having read the pleadings and the briefs submitted by the attorneys, and also having had the court reporter read to him the testimony of the witnesses in this case, and being fully advised in the premises, does find:

"That this is a matter that should be presented to the Grievance Committee of the Bar of the State of Kansas, and is not a matter to be decided by the district court, the question in the matter being whether or not there has been a violation of the rules of professional ethics.

"That the evidence in the case showed that there had been a fire and probably a gas explosion in the City of Lyons, Kansas, in which a number of people had their property destroyed, and that a number of actions had been filed in the district court of Rice County, Kansas, against the City of Lyons, Kansas, a municipality owning and operating a gas distribution system in said city. That one of these actions has already been tried, and is now in the process of being appealed to the Supreme Court of Kansas. That these actions all arose out of the same explosion or fire, or whatever cause, and were filed by the different individuals who were injured by loss of their property at the same time as the individual whose case has already been tried.

"That at the time of the hearing of the evidence, one Art Wilson testified, one Myrtle Brown testified, and one J. R. Mays testified, that they had gone to see Mr. Edward Wahl, an attorney practicing law in the city of Lyons, and had given him information, and that he had prepared their claims for them to be submitted to the City of Lyons. The fact that these individuals went to Mr. Wahl indicates to the court that Mr. Wahl was their choice of attorneys in Rice County, Kansas, and that they went to him with the idea of his looking after their affairs. That Mr. Wahl either assisted them, or did prepare their claims, and instructed them how to file them, and that they filed their claims with the City Clerk in accordance with the instructions given them by Mr. Wahl. There is evidence that later Mr. Wahl informed them that he could not represent them, or at least a part of them; and it may be that some of them did not intend for him to represent them. That later suits were filed by these individuals through other attorneys, and that later Mr. Wahl was employed by and accepted employment by the City of Lyons, Kansas, to assist in the defense of these actions. That then this action, asking for an injunction or restraining order was filed. At the time this action was first heard, the court was under the impression that probably it would grant this injunction, but after thinking it over, and reading the authorities submitted by the various attorneys, and having had the evidence in the case read to him, does find that the District Court of Rice County, Kansas, is not a proper forum in which to decide this matter; that if Mr. Wahl has been guilty of unethical practices, that the matter should be referred to the Grievance Committee of the Bar Association of State of Kansas so that they can take appropriate action to discipline Mr. Wahl.

"Judgment will be for the defendants."

Plaintiffs Wilson, Mays and Sevier, but not the Browns, have appealed, and, under proper specifications of error, contend the action of the trial court was erroneous.

Disregarding complaints concerning certain procedural technicalities, which, for the purpose of and considering the nature of this case, we consider to be immaterial, the contentions of the parties are as follow:

Plaintiffs Wilson and Mays contend that in the discussion and preparation of their statutory claims against the city by Mr. Wahl they reposed confidence in him and that in good conscience and ethics he is now precluded from representing the city in opposition to their damage actions. Plaintiff Sevier, although conceding that Mr. Wahl had nothing to do with the preparation of her claim, makes the same general contention on the ground that she is "similarly situated," that is, her interests, insofar as the principle here involved is concerned, are "substantially identical" to those of Wilson and Mays.

On the other hand, Mr. Wahl states that he has now withdrawn as counsel for the city in the Wilson and Mays cases, which are still pending; that as the Browns have not appealed no question concerning their rights is properly before the court; that as he had nothing to do with Sevier's claim she has no standing in court; that the most that can be said of his actions is that in June of 1954 he gratuitously typed up the claim statements of Wilson, the Browns and Mays, the extent of which was merely to list the items of property damaged in the fire; that the relationship of attorney and client did not in fact exist, and that this entire lawsuit is an attempt to "smear" his character and reputation.

Although it is no part of the record below, nevertheless, due to the nature of this case, we think it is proper to relate what further action was had in the matter, as shown by undisputed documents filed with this court on the date this appeal was argued.

The judgment below was rendered on March 2, 1957, and, pursuant to the trial court's suggestion, the matter was referred to the Committee on Professional Ethics of the Bar Association of the State of Kansas. That committee, through its chairman, on April 23, 1957, rendered the following opinion:

"Under the laws of Kansas, no action for damages against any city can be maintained unless written claim is first filed with the City Clerk, setting forth the circumstances with a certain degree of particularity (G. S. 12-105 1949).

"A lawyer, with or without compensation therefor, prepared and filed such

a claim on behalf of a client. Later that lawyer is retained by the city and defends a case brought by his former client based on the claim prepared by that lawyer.

"Does the attorney, in accepting such employment by the city, violate the Canons of Professional Ethics?

"In the opinion of the Committee, the claimant, now the plaintiff in the suit against the city, necessarily reposed confidence in the attorney preparing and filing claim with the city, and the attorney, in accepting employment by the city to defend a suit based and brought on the claim he prepared and filed, violated Canon 6 of the Canons of Professional Ethics, and such attorney should withdraw from the employment of the city to defend such suit."

The Preamble to the Canons of Professional Ethics, found at 164 Kan. XI, reads:

"In America, where the stability of courts and of all departments of government rests upon the approval of the people, it is peculiarly essential that the system for establishing and dispensing justice be developed to a high point of efficiency and so maintained that the public shall have absolute confidence in the integrity and impartiality of its administration. The future of the republic, to a great extent, depends upon our maintenance of justice pure and unsullied. It cannot be so maintained unless the conduct and the motives of the members of our profession are such as to merit the approval of all just men.

"No code or set rules can be framed, which will particularize all the duties of the lawyer in the varying phases of litigation or in all the relations of professional life. The following canons of ethics are adopted by the American Bar Association as a general guide, yet the enumeration of particular duties should not be construed as a denial of the existence of others equally imperative, though not specifically mentioned."

Canon 6 reads:

"It is the duty of a lawyer at the time of retainer to disclose to the client all the circumstances of his relations to the parties, and any interest in or connection with the controversy, which might influence the client in the selection of counsel.

"It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.

"The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed."

Insofar as here material, Canon 37 reads:

"It is the duty of a lawyer to preserve his client's confidences. This duty outlasts the lawyer's employment, and extends as well to his employees; and neither of them should accept employment which involves or may involve the

disclosure or use of these confidences, either for the private advantage of the lawyer or his employees or to the disadvantage of the client, without his knowledge and consent, and even though there are other available sources of such information. A lawyer should not continue employment when he discovers that this obligation prevents the performance of his full duty to his former or to his new client."

In *Purdy v. Ernst*, 93 Kan. 157, 143 Pac. 429, although factually different, this court quoted with approval the following statement from Ruling Case Law:

" 'The test of inconsistency is not whether the attorney has ever appeared for the party against whom he now proposes to appear, but it is whether his accepting the new retainer will require him, in forwarding the interests of his new client, to do anything which will injuriously affect his former client in any matter in which he formerly represented him, and also whether he will be called upon, in his new relation, to use against his former client any knowledge or information acquired through their former connection.' " (p. 160.)

For a recent decision dealing with the attorney-client relationship, insofar as here applicable, see *State v. Leigh*, 178 Kan. 549, 289 P. 2d 774.

On the general subject matter, see also 7 C. J. S., Attorney and Client, § 47, p. 823, § 48, p. 827; 5 Am. Jur., Attorneys at Law, §§ 64, 65, 66, pp. 296, 297; and the annotations found at 51 A. L. R. 1307, 126 A. L. R. 1271 and 52 A. L. R. 2d 1243.

We feel that we are not called upon to write an extended opinion on the question of professional ethics in this case. Nevertheless, certain aspects of the matter stand out in clear relief and require brief discussion.

Because of Mr. Wahl's subsequent withdrawal from the Wilson and Mays cases it is contended that, as to them, the question involved in this appeal is now moot. In a strictly technical sense it may be conceded that that is true. Also, as heretofore stated, the Browns did not appeal, and it is contended that no issue involving them is before the court. Again, in a strictly technical sense, it must be conceded that that is correct. Also, as previously stated, Mr. Wahl had nothing whatever to do with the preparation of plaintiff Sevier's claim, and it is contended she therefore has no standing in court with respect to his participation as defense counsel in her case against the city. Again, in a strictly technical sense, perhaps that is true.

As we view this entire matter, however, the trouble with these arguments is that we think the issue involved transcends the technicalities of hard and fast rules relating to appellate review.

No dishonesty or intentional wrongdoing is imputed to Mr. Wahl, and neither has it been made to appear that any information obtained by him in connection with the preparation of the statutory claims has been used by him in violation of his obligations as an attorney to the disadvantage of any of these plaintiffs. Nevertheless, there is no doubt in our minds, and we have no hesitancy in holding, that under the circumstances he should not have accepted the employment in behalf of the city in defense of the damage actions, and that his doing so constituted a violation of the spirit, if not the letter, of the mentioned Canons of Professional Ethics and the elementary general rules laid down in the authorities cited. When confronted with such a situation, and doubt exists in the mind of an attorney as to the proper course to follow, the doubt always should be resolved in favor of not accepting the employment. An attorney should avoid not only situations where a conflict of interest is actually indicated, but also those in which a conflict is likely to develop.

Looking at this matter objectively as of the time of hearing below, and in view of the position and status of the parties, it cannot be denied that these plaintiffs, insofar as Mr. Wahl was concerned, had "substantially identical" interests in that the question of proof of negligence, if any, on the part of the city in the operation and maintenance of its gas lines, was common to all. For the reasons stated, and as a matter of principle, we think that he should not have accepted the employment by the city in defense of those actions. Having done so, however, he should have voluntarily withdrawn when objection to his participation was first made. Upon his failure to do so it became the duty of the trial court to forbid his further participation therein. (*State v. Leigh, supra,* p. 553.)

The judgment is therefore reversed with directions to proceed in harmony with what has been said in this opinion.