NORTHEASTERN OKLAHOMA COMMUNITY DEVELOPMENT CORPORATION, Petitioner,

v.

Honorable John Q. ADAMS, District Court Judge of Mayes County, Oklahoma, and Tony Jack Lyons, Esquire, Member of the Bar, Respondents.

No. 46504.

Supreme Court of Oklahoma.

May 29, 1973.

Doyle & Holmes, Stan P. Doyle, Tulsa, for petitioner.

Booth & Jay, by Gary M. Jay, Tulsa, and Lyons & Dean, and by Tony Jack Lyons, Pryor, pro se. for respondents.

HODGES, Justice.

This is an application for writ of mandamus against the district judge of Mayes County, John Q. Adams, requesting that he be ordered to change venue of the action and to disqualify the respondent attorney for conflict of interest. Mandamus against respondent attorney ordering his disqualification is also requested.

The question presented as one of first impression in Oklahoma. The issue to be resolved is whether, in the absence of any court appearance, the filing of a written appearance to extend time to answer, creates and establishes in and of itself, the confidential and privileged relationship of attorney and client such as to prevent the representation of adverse interests after termination of employment.

The facts are substantially as follows:

On August 10, 1972, petitioner, Northeastern Oklahoma Community Development Corporation, (N.O.C.D.C.) was sued by certain plaintiffs in the District Court of Mayes County, Oklahoma.

Tony Jack Lyons, (Lyons) a licensed and practicing attorney in Mayes County, Oklahoma was approached by the acting President and general counsel concerning his employment to defend the actions

against it. He subsequently entered an appearance on behalf of N.O.C.D.C. in these causes and other litigation against N.O.C.D.C.

Lyons was notified by the subsequent president of N.O.C.D.C. that he did not represent the corporation and Lyons terminated his services. He then sued to collect his fee, including his fee for services rendered in the cases pending in Mayes County.

Lyons continued, however, as attorney of record for N.O.C.D.C. until less than two weeks prior to the scheduled trial when he filed the following pleading:

> "Comes now Lyons & Dean, Attorneys, and they state to the Court as theretofore through inadvertence, happenstance, or mistake they entered an appearance herein as attorneys for the defendants. That they are in truth or in fact they are not now or never have been attorneys for the defendants in the above-entitled numbered cause and that they do hereby enter their appearance in this cause as attorneys for the plaintiff."

In open court, immediately after the filing of the above pleading the plaintiff N.O.C.D.C. filed a motion to disqualify Lyons.

Six days prior to the trial date the respondent district judge overruled N.O.C.D.C.'s *Motion to Disqualify Lyons* and permitted him to continue his representation.

■ N.O.C.D.C. requests a change of venue because it alleges that it has suffered great prejudice against its cause in Mayes County by the appearance to the public of Mr. Lyons' actions in representing adverse parties; and it cannot receive a fair and impartial trial in Mayes County. Lyons' entry of appearance upon the court records was his only action. No newspaper, radio, or television publicity concerning these matters is alleged. The mere filing of a pleading is not such a matter of common knowledge to prospective jurors as to constitute grounds for a change of venue or to endanger and deny due process

to N.O.C.D.C. or endanger its rights to a fair "and" impartial trial. The allegation of prejudice is unsupported. The change of venue is therefore denied.

N.O.C.D.C. further alleges that the withdrawal of appearance of counsel Lyons on behalf of N.O.C.D.C. and the simultanuous appearance for its adversary could and would create an impression with the public at large that N.O.C.D.C.'s defenses and actions are without merit, which would prevent N.O.C.D.C. from receiving a fair and impartial trial, constituting a denial of due process of law.

N.O.C.D.C. has never taken the position before the trial court nor the Supreme Court that respondent attorney willfully undertook to reveal a confidence of his former client; or that he represented the other side because of any corrupt motive. Petitioner asserts however, that respondent is guilty of an error of judgment in permitting himself to become involved in the litigation for both sides of the lawsuit. We agree.

■ Evidently, there was some misunderstanding concerning Lyons initial employment. However, as an officer of the court, an attorney is bound by the highest possible standards and as such carries the burden of avoiding the appearance of evil. He must conduct himself in such a way as to maintain the integrity of the profession. In Re Shoemake, 168 Okl. 77, 31 P.2d 928, 929 (1934).

■ An attorney should avoid not only situations where a conflict of interest is actually indicated, but also those in which a conflict is likely to develop. Wilson v. Wahl, 182 Kan. 532, 322 P.2d 804, 810 (1958).

■ An attorney who has acted for one party cannot render professional difference in this respect whether the client-attorney relationship has terminated, the obligation of fidelities still continues. United States v. Bishop, 90 F.2d 65 (C.A. 6th Cir. 1937).

■ It is self-evident that where a member of the bar represents a litigant in

a cause, he should not thereafter represent the opposing party in any step in the proceeding in or arising out of the same cause. There· is always a possibility, however remote, that confidential information received from the original client may be used to his detriment. In Re Mattera, 34 N.J. 259, 168 A.2d 38 (1961). This statement may be transposed to stand for the principle foundation of this opinion. A member of the bar who has represented a party in any step of the proceedings or arising out of the same cause, may not thereafter represent the opposing party, without the permission of the initial client. See In Re Jeter, 163 Okl. 27, 20 P.2d 886 (1933).

■ An attorney is admitted as a member of the bar to promote the ends of justice and that implies something more than private gain. A license to practice law is not for the benefit of individual members of the profession, but rather for the benefit of the public. State v. Booth, 441 P.2d 405, 407 (Okl.1966); In re Bond, 168 Okl. 161, 31 P.2d 921, 923 (1934).

■ Lyons contends though that he did not receive any confidential communications which would be detrimental to N.O. C.D.C., and in those instances a lawyer should be allowed to continue his employment. In our opinion, however, this principle is fraught with too many dangers and suspicions. On the contrary, we approve of the pronouncement made by the Kansas Supreme Court in the case of State v. Leigh, 178 Kan. 549, 289 P.2d 774, 777 (1955), where they said:

"It is the honor of the legal profession that its fidelity to its clients can be depended upon, that a person may safely go to a lawyer and counsel with him upon personal and confidential matters with the absolute assurance that the lawyer's tongue is tied from ever divulging it, and a strict enforcement of this rule requires that *an attorney, on terminating his employment, cannot thereafter act as counsel against his client in the same general matter, even though, while acting for his former client, he acquired no knowledge which could operate to the client's disadvantage in the subsequent adverse employment. * * *"* (Emphasis ours)

The rule enunciated in State v. Leigh, supra, is a rigid one, but it is designed, not only to prevent the dishonest practitioner from fraudulent conduct, but to preclude the honest practitioner from placing himself in a position where he may be required to choose between two conflicting duties.

We find the trial court erred when it refused to order the disqualification of Lyon. The court has the duty over and above that of counsel to see that the integrity and good name of the bar and administration of justice are upheld. It was its obligation to forbid the attorney from changing sides in substantially the same suit though at different trials. This must be done to avoid suspicion and distrust in the mind of petitioner and prevent the opportunity for misunderstanding on the part of the public which could lead to a lack of confidence in the bar. See W. E. Basset Company v. H. C. Cook Company, 201 F. Supp. 821, 825 (D.C.Conn.1962); Wilson v. Wahl, 182 Kan. 532, 322 P.2d 804, 810 (Kan.1958). In order to promote the ends of justice, the appearance of justice is sometimes equated with justice itself.

■ We do not, nor did petitioner, impute to the attorney herein any dishonest or corrupt motive. Although this may appear to be a borderline siutation, because Lyons did not make court appearances, and his employment was repudiated, we think that he should not have accepted the employment by parties adverse to N.O.C.D.C. Having done so, he should have voluntarily withdrawn when objection to his participation was first made. Upon his failure to do so, it became the duty of the trial court to forbid his further participation. See Wilson v. Wahl, p. 810 of 322 P.2d supra, and State v. Leigh, p. 777 of 289 P.2d supra.

It is appropriate and a writ of mandamus is hereby issued to the district judge ordering the disqualification of Tony Jack

Lyons. The writ of mandamus requesting a change of venue is denied.

DAVISON, C. J., and IRWIN, BERRY, LAVENDER, BARNES, SIMMS and DOOLIN, JJ., concur.