No. 39,953

The State of Kansas, *Appellee,* v. Lawrence Lorraine Leigh, *Appellant.*

(289 P. 2d 774)

Opinion filed November 12, 1955.

*J. D. Conderman,* of Iola, argued the cause, and *Kenneth Foust,* of Iola, was with him on the briefs for the appellant.

*Charles F. Forsyth,* county attorney, of Erie, argued the cause, and *Harold R. Fatzer,* attorney general, and *Paul E. Wilson,* assistant attorney general, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Wertz, J.: From a conviction in the district court of Neosho county for the offense of burglary, and larceny in connection with the burglary, defendant has appealed. He urges as one of his assignments of error that the trial court, over his objection, permitted Charles F. Forsyth, county attorney, to appear as counsel for the state in the prosecution of the action, after having previously been consulted by the defendant who made full disclosure of all facts

pertinent to his defense, in contemplation of employment of Mr. Forsyth as counsel prior to his election as county attorney.

We glean from the record presented that defendant was arrested September 11, 1954 and remained incarcerated in the county jail until after his trial and removal to the state penitentiary. At the time of defendant's arrest, Mr. John Sherman was the county attorney of Neosho county. Shortly after defendant's arrest and while in the county jail, defendant's wife solicited the services of Charles Forsyth, who was then the nominee for county attorney of Neosho county, to represent the defendant and, on two occasions, Mr. Forsyth conferred with defendant in the county jail with reference to acting as his counsel in the case. Mr. Forsyth was elected county attorney and took office in January, 1955. Defendant's case was called for trial, February 21, 1955, Mr. Forsyth appearing as county attorney for the state in the prosecution of the action. A few days before the trial, defendant employed Mr. J. D. Conderman as his attorney. After the jury was selected, but before it was sworn to try the case, Mr. Conderman interposed the following objection in behalf of defendant:

"If your Honor please, as the court knows I was only recently employed as co-counsel for the defendant with Mr. Foust. It comes to my attention from statements made to me by the defendant and his wife that when this action first arose and, of course, prior to the time that Mr. Forsyth became County Attorney, that the defendant and his wife both contacted Mr. Forsyth and sought his services as counsel for the defendant; that in that discussion the defendant and his wife divulged to Mr. Forsyth the facts on which prosecution would be based, and of course, on which his defense must be based. Also, there was a discussion of fee, and I believe even that Mr. Forsyth called on Mr. Leigh in the jail on more than one occasion. I think in such case the facts which have been obtained by Mr. Forsyth, of course, were obtained prior to the time that he became County Attorney and now since he is County Attorney and in a position to go ahead and prosecute, it would place him in a position that he should be disqualified from trying the case as County Attorney, and we, therefore, object to further trial of the case with Mr. Forsyth as acting as attorney for the State."

The court permitted affidavits to be filed to substantiate the statements made in the objection. The sworn affidavit of defendant's wife related that a few days after defendant's arrest, she went to Mr. Forsyth's office to secure his services in defending her husband; that in answer to questions put to her by Mr. Forsyth, she detailed everything she knew and what her husband had told her about the alleged offense with which he was charged, and on at

least two other occasions prior to the time Mr. Forsyth took office as county attorney, she discussed the case with him in his office. On two other occasions she was present in the county jail when Mr. Forsyth, after naming his retainer fee, talked over the details of the case with defendant, at which times, in answer to questions put to him, defendant told Mr. Forsyth all the facts pertaining to the case.

Defendant's affidavit declared that after his arrest, while incarcerated in the county jail, and prior to the time Mr. Forsyth became county attorney, he came to see him and named the retainer fee he would require in the defense of the action. In answer to questions put to him by Mr. Forsyth, he detailed the facts and told him everything that happened on the night of the alleged offense with which the defendant was charged, and gave him such information with the understanding that he would defend him in the action. At this juncture, Mr. Forsyth advised the trial court that defendant's wife did come to see him on several occasions. On at least two occasions while visiting the county jail he talked to defendant about the case, preliminary to employment as an attorney. There was a question whether the case could be tried before he became county attorney, and he advised this would be one factor which would decide whether he could represent them; that he would attempt to determine whether the case could definitely be disposed of before January 1, when he went into office. If not, he could not represent them, and that he talked to John Sherman, the county attorney, concerning the disposition of the case before the first of the year. It became apparent there was a possibility the case could not be tried and completed by that time. He further stated that on several occasions he advised defendant and his wife he would not agree to represent them until he knew whether the case could be disposed of before he took office. At no time during the talks did he take any notes, and stated he did not remember what the defendant or his wife told him concerning the facts of the case. He said the facts they told him had nothing to do with the prosecution of the case as, in its preparation, all the evidence came from outside sources; that in his opinion he did not believe he was disqualified, but it was a matter for the court to decide. After some colloquy between counsel and the court, defendant's objection was overruled, and Mr. Forsyth was allowed to proceed as counsel for the state. It may be stated that

defendant preserved his objection throughout the trial of the case and asserted it as a ground on his motion for a new trial.

This court has never been called upon in a criminal case to pass upon the question similar to the one here involved. However, the identical question has been passed upon in other jurisdictions. The inviolate rule has long been firmly established both in the Canons of Professional Ethics and by judicial opinions that attorneys cannot represent conflicting interests or undertake to discharge inconsistent duties. When an attorney has once been retained and received the confidence of a client, he cannot enter the services of those whose interests are adverse to that of his client or take employment in matters so closely related to those of his client or former client as, in effect, to be a part thereof. The rule is a rigid one, and it is well that it is so. It is designed not only to prevent the dishonest practitioner from fraudulent conduct, but to preclude the honest practitioner from placing himself in a position where he may be required to choose between two conflicting duties. He should undertake no adverse employment, no matter how honest may be his motives and intentions. He owes to his client fidelity, secrecy, diligence and skill, and cannot take a reward from the other side. He is not, as a general rule, allowed to divulge information and secrets imparted to him by his clients or acquired during their professional relation unless authorized to do so by the client himself.

It is the honor of the legal profession that its fidelity to its clients can be depended upon, that a person may safely go to a lawyer and counsel with him upon personal and confidential matters with the absolute assurance that the lawyer's tongue is tied from ever divulging it, and a strict enforcement of this rule requires that an attorney, on terminating his employment, cannot thereafter act as counsel against his client in the same general matter, even though, while acting for his former client, he acquired no knowledge which could operate to the client's disadvantage in the subsequent, adverse employment, and this rule applies not only to civil, but criminal cases. An attorney cannot be permitted to participate in the prosecution of a criminal case if, by reason of his professional relations with the accused, he has acquired knowledge of facts upon which the prosecution is predicated or which are closely interwoven therewith.

The mentioned rules of law, together with many others, were enunciated in the following similar cases: *Peirce v. Palmer,* 31 R. I.

432, 77 A. 201, Ann. Cas. 1912B, 181; *People v. Gerold*, 265 Ill. 448, 107 N. E. 165, Ann. Cas. 1916A, 636; *Steeley v. State*, 17 Okl. Cr. 252, 187 Pac. 821; *Hall v. State*, 24 Okl. Cr. 197, 217 Pac. 229; *Thoreson v. State*, 69 Okl. Cr. 128, 100 P. 2d 896; *State v. Rocker*, 130 Ia. 239, 106 N. W. 645; *State v. Halstead*, 73 Ia. 376, 35 N. W. 457; *Hosford v. Eno*, 41 S. D. 65, 168 N. W. 764; *In re Michal*, 415 Ill. 150, 112 N. E. 2d 603; *T. C. Theatre Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265; See, also, 18 C. J. 1312; 27 C. J. S. 398, § 12(3) (e); 5 Am. Jur. 296, § 64, and 298, § 66.

The authorities are to the effect that in a criminal action, even where no fee has been agreed upon, demanded or asked, and though the services rendered are gratuitous, yet if an attorney has discussed the case with his client or proposed client, or voluntarily listens to his statement of the case preparatory to the defense, he is thereby disqualified to accept employment on the other side as a prosecutor or assistant prosecutor. (*Steeley v. State*, supra; *Ward v. State*, 33 Okl. Cr. 182, 242 Pac. 575; *Yancey v. State*, 41 Okl. Cr. 197, 271 Pac. 170.)

Under the circumstances in the instant case, counsel for the state should have voluntarily withdrawn and upon his failure to do so, it became the duty of the trial court to have forbidden his further participation therein. We do not impute to the attorney herein any dishonest purpose, but a conviction under such circumstances, irrespective of the guilt or innocence of the defendant, cannot be permitted to stand.

In view of this holding, it is not necessary to discuss the other assignment of error. It follows that the judgment of the trial court is reversed and the case remanded with directions to grant defendant a new trial.

It is so ordered.