(602 P.2d 122)

No. 50,508

In The Matter of The Estate of Alphonse Richard, Deceased.

Petition for review denied January 29, 1980.

Opinion filed November 9, 1979.

*Thomas C. Boone,* of Hays, for appellant, David R. Richard.

*James S. Phillips, Jr.,* of Phillips & Phillips, Chartered, of Wichita, and *J. Ronald Vignery,* of Foust & Vignery, of Goodland, for coadministrators, Lawrence Bruggeman and Germaine Jacobs.

Before SWINEHART, P.J., ABBOTT and PARKS, JJ.

ABBOTT, J.: This is an appeal by the plaintiff, David R. Richard, from the denial of his claim against the estate of his deceased uncle, Alphonse Richard, for specific performance of an alleged oral contract.

The parties do not challenge the sufficiency of the evidence supporting the trial court's rejection of the oral contract claim. Nor is there any issue in this appeal concerning the propriety of James S. Phillips, Sr., having acted as attorney for both the

proposed ward, Alphonse Richard, and David R. Richard in an earlier guardianship and conservatorship proceeding. The sole issue is whether or not James S. Phillips, Sr., was guilty of ethical misconduct that should have resulted in his disqualification and, if so, whether that misconduct amounts to reversible error.

The record in this case spans more than 1200 pages. There is considerable conflict about what actually took place and also conflict between statements made to this Court and statements appearing in the record. We will attempt to set out the facts in chronological order as they appear to us from the record, beginning with a brief overlay of the events which the parties agree have occurred.

David Richard was living with his wife and two small children in Wichita in the late 1960's while working and attending college. During the time he was in Wichita, he was represented in several matters by James S. Phillips, Sr. The nature and extent of the representation is in dispute. Alphonse Richard, David's uncle, was an elderly man in poor health who owned considerable real estate near Brewster, Kansas. He phoned David in Wichita and made arrangements for David and his family to move to Brewster to participate in the farming of his land.

As the health of Alphonse Richard deteriorated, David suggested that James S. Phillips, Sr., be retained to prepare a general power of attorney whereby David would have authority to act in behalf of Alphonse. Alphonse requested David to contact Phillips; the power of attorney was prepared and Alphonse Richard executed it. Phillips later represented Alphonse (who had again enlisted David's aid in contacting Phillips) in a farm tenancy eviction action.

A relative of Alphonse's commenced an action on October 8, 1976, petitioning for her appointment as guardian and conservator for Alphonse. David once again contacted Phillips who undertook the defense opposing the appointment. Alphonse Richard died on March 6, 1977, in the midst of the guardianship and conservatorship proceeding. David petitioned for and was granted status as special administrator of the estate. On April 7, 1977, the court *appointed* Phillips to serve as co-counsel to the coadministrators of the estate. It is apparent from the court's comments that each of the two factions selected an administrator, and the judge used the term "appoint" as to the lawyer for each

faction to signify his acceptance of the parties' compromise agreement. David later employed Thomas Oglevie as his counsel and then filed a claim against the estate, alleging that he was entitled to specific performance of an oral contract by Alphonse Richard to convey his property to David. David did not object to Phillips' serving as co-counsel for the estate until midway through the trial of his claim when an objection was lodged to Phillips' cross-examining David's wife and a motion was made to have Phillips disqualified.

Prior to a ruling on the motion to disqualify, Phillips assured the trial judge that he had never represented Mrs. Richard "in this case." He further assured the court that he had never advised David on legal matters involving Alphonse Richard's estate and that his past representation of David was in "other matters unrelated to this case." Although there is other controversy between David and Phillips, we are of the opinion the crux of David's complaint stems from statements made by Phillips after David's counsel, Oglevie, had informed the court David would testify that he had discussed the claim with Phillips and thought Phillips had given David legal advice concerning the claim. David did so testify later. The trial judge specifically inquired of Phillips about the claim and the following colloquy took place:

"THE COURT: Have you actually advised Mr. David Richard concerning this claim that he is now filing against the estate?

"MR. PHILLIPS: This claim for specific performance of this contract or this claim against the estate, absolutely not.

"MR. OGLEVIE: Well Judge, David Richard tells me otherwise.

"MR. PHILLIPS: Well, its not correct.

. . . .

"THE COURT: If Mr. Phillips is going to sit there and tell me he has not represented Mr. David Richard concerning the filing of this claim or anything to do with this particular claim, I see no particular objection to him continuing in the matter. As I say, I have wondered about the whole relationship, but being late, I really have not had much of an idea who represented who or when.

"MR. PHILLIPS: Well, I represented Mr. Alphonse Richard as far as I'm concerned in the guardianship case, and I represented him prior to the petition to appoint a proposed conservator and a proposed guardian. I had every right to represent him, he asked me to represent him, and I did represent him as far as I'm concerned.

"In this case, I have never advised any one of the heirs, and especially David Richard, to file this claim or had anything to do with it. The first time I knew about it was when I received a copy from Mr. Oglevie through the mail."

The trial was to the court with the judge sitting as the trier of

facts and in that capacity he had to decide whether he would believe David Richard and his wife. The trial judge was thus assured by the Richards' lawyer, or former lawyer, that David Richard was not being truthful on crucial evidence. As an officer of the court, Phillips' statements to the court are considered to be the equivalent of being given under oath. *State v. Barrett,* 207 Kan. 178, 184, 483 P.2d 1106 (1971).

Although not as significant as the above, prior to a ruling on the motion to disqualify Phillips, David's lawyer (Oglevie) stated that the question of conflict of interest had been raised by Judge Birney in the guardianship proceeding. Phillips informed the court that, "Judge Birney never at any time, and I've got the transcript, objected to me representing Mr. Richard all through that proceeding." In his brief, counsel misconstrues Judge Birney's position in the guardianship proceeding. Judge Birney was considering a motion by Phillips to remove Alphonse Richard's guardian ad litem and appoint Phillips. Judge Birney rather forcefully and bluntly pointed out the potential conflict of interest and *denied the motion.* Phillips somehow construes that action as approval by Judge Birney that he did not have a conflict. The only significance this has to this case is that Judge Birney has retired and the trial judge stated on the record that he had not read the transcripts of prior hearings and thus was relying in large part on statements of counsel in ruling on the motion to disqualify.

Much of the record and the briefs of both parties are devoted to attempting to prove or disprove whether Phillips represented David Richard after David moved from Wichita to the farm. As will be seen later, the record clearly and unquestionably proves that he did. Phillips, in his brief and in various affidavits filed, as well as in statements made at oral argument, took the position that he never represented David Richard after David left Wichita except as mere scrivener of the power of attorney, and that he never discussed David's move to the farm with David prior to David's leaving Wichita. Surely Phillips, somehow, misunderstood or poorly expressed his position.

Without unduly prolonging this opinion, the record unequivocally shows that Phillips first entered the guardianship case as attorney for David R. Richard only. He filed pleadings as David's lawyer and verified at least one of them in David's behalf. He later entered an appearance on behalf of Alphonse Richard.

Thereafter, he signed and filed pleadings identifying himself as the attorney for both David and Alphonse Richard. He specifically filed a pleading on David's behalf, requesting a protective order to prevent David from having to answer fiscal questions concerning his action in operating the farm for Alphonse Richard. This takes on significance because David's deposition was taken wherein it appeared David was claiming he was to end up owning the farm in return for helping Alphonse, and in later proceedings in the conservatorship, opposing counsel so informed the court in Phillips' presence.

After Alphonse Richard's death on March 6, 1977, his sister filed a petition for appointment of her son and herself as coadministrators of the estate. Phillips, as David's lawyer, then filed a petition to appoint David special administrator to operate the farm, and David was so appointed. Other pleadings were prepared, signed and filed by Phillips as lawyer for David and two other persons who are apparently his sisters. The parties then agreed to the appointment of two people, one suggested by Alphonse Richard's sister and one suggested by David and his two sisters, as coadministrators, with each side's lawyer acting as co-counsel. That order conclusively shows that Phillips was representing David and that the appointments were made with consent of counsel. Phillips, as David's attorney, next closed out the special administration of the estate. A claim for special administrator's fee was then prepared on David's behalf on legal paper bearing Phillips' name and address.

On September 2, 1977, Thomas Oglevie filed the claim for David that is the subject of this appeal. Phillips did not and has not to this day requested permission to withdraw as David's attorney of record.

In October of 1977 the coadministrators filed a petition alleging that Phillips had actually represented David in the guardianship and conservatorship proceedings, that David had wrongfully used Alphonse's money to pay Phillips, and praying that David be ordered to repay that money to the estate. Phillips himself, as attorney for the estate, prepared notices setting for hearing David's claim for special administrator's fee, claim for services in the guardianship, and the estate's counterclaim in the amount of $17,774.64 against David for improper expenditure of funds. We also note the transcripts contain admissions by Phillips that he

did represent both David and Alphonse Richard at various times after David moved to the farm and up to the date of Alphonse's death.

The trial judge, after reviewing a portion of the various records available to him and hearing argument of counsel, declined to disqualify Phillips. Generally it is within the sound discretion of the trial court to determine from all the circumstances whether alleged misconduct of counsel may have influenced a verdict, and its conclusion in the matter will not be disturbed unless, under all the circumstances, it is plainly error. *Kleibrink v. Missouri-Kansas-Texas Railroad Co.,* 224 Kan. 437, 443, 581 P.2d 372 (1978); *Miller v. Braun,* 196 Kan. 313, 316, 411 P.2d 621 (1966). Although the case at hand was tried to the court and had no jury involved, the district court's discretion remains the same. See *Parsons Mobile Products, Inc. v. Remmert,* 216 Kan. 256, 259, 531 P.2d 428 (1975). In an action tried to the court, the Kansas Supreme Court in *Mildfelt v. Lair,* 221 Kan. 557, 569, 561 P.2d 805 (1977), upheld a trial court's decision not to disqualify an attorney for an alleged conflict of interest when the evidence showed no abuse of discretion on the part of the court. Therefore, plaintiff shoulders the formidable burden of showing that the trial court's ruling amounted to an abuse of discretion.

As we construe the position of the estate, it consists of three sequential arguments: (1) that no attorney-client relationship existed between Phillips and David Richard; (2) that if such a relationship should be found (and we have so found), Phillips' representation did not involve a conflict of interest; and (3) that if we are of the opinion there was an ethical infraction, there was not sufficient prejudice to warrant reversal of the district court's judgment concerning the oral contract.

We emphasize that the Kansas Supreme Court has exclusive jurisdiction to discipline lawyers for violation of our Code of Professional Responsibility. Our concern is whether any alleged violations resulted in the denial of a fair trial to David Richard. The record conclusively and overwhelmingly establishes an attorney-client relationship. The record is replete with pleadings prepared for David by Phillips evidencing such a relationship and with Phillips' own admissions of his representation. Furthermore, an attorney's responsibility to his client does not end when the client employs a different attorney to present his claim.

As this Court held in *Alexander v. Russo,* 1 Kan. App. 2d 546, 552, 571 P.2d 350, *rev. denied* September 28, 1977:

" '[I]t has been emphasized that the duty of fidelity and good faith imposed upon the attorney in dealing with his client is founded, not on the professional relation per se, but on the influence created by the relation, and that the duty does not always cease immediately on the termination of the relation but continues as long as the influence created by that relationship continues to exist.' "

We turn to the question whether Phillips' service as co-counsel to the estate of Alphonse Richard created a conflict of interest in violation of the Code of Professional Responsibility. Plaintiff directs this Court to *State v. Leigh,* 178 Kan. 549, 289 P.2d 774 (1955), quoting at 552:

"It is the honor of the legal profession that its fidelity to its clients can be depended upon, that a person may safely go to a lawyer and counsel with him upon personal and confidential matters with the absolute assurance that the lawyer's tongue is tied from ever divulging it, and a strict enforcement of this rule requires that an attorney, on terminating his employment, cannot thereafter act as counsel against his client in the same general matter, even though, while acting for his former client, he acquired no knowledge which could operate to the client's disadvantage in the subsequent, adverse employment, and this rule applies not only to civil, but criminal cases. An attorney cannot be permitted to participate in the prosecution of a criminal case if, by reason of his professional relations with the accused, he has acquired knowledge of facts upon which the prosecution is predicated or which are closely interwoven therewith."

Following closely on the heels of the Court's decision in *Leigh* came *Wilson v. Wahl,* 182 Kan. 532, 539, 322 P.2d 804 (1958). Discussing the propriety of one attorney filing claims against a city and later accepting employment by the city to defend damage actions, which included actions brought by some of his former clients, the Court stated:

"No dishonesty or intentional wrongdoing is imputed to Mr. Wahl, and neither has it been made to appear that any information obtained by him in connection with the preparation of the statutory claims has been used by him in violation of his obligations as an attorney to the disadvantage of any of these plaintiffs. Nevertheless, there is no doubt in our minds, and we have no hesitancy in holding, that under the circumstances he should not have accepted the employment in behalf of the city in defense of the damage actions, and that his doing so constituted a violation of the spirit, if not the letter, of the mentioned Canons of Professional Ethics and the elementary general rules laid down in the authorities cited. When confronted with such a situation, and doubt exists in the mind of an attorney as to the proper course to follow, the doubt always should be resolved in favor of not accepting the employment. An attorney should avoid not only situations where a conflict of interest is actually indicated, but also those in which a conflict is likely to develop."

An attorney must not represent conflicting interests or undertake duties which are inconsistent. *State v. Sullivan & Smith,* 210 Kan. 842, 504 P.2d 190 (1972). Based on opposing counsel's statement, the court and Phillips were aware that Phillips would or should be called as a witness and his testimony would relate to a contested matter, a practice that is prohibited by DR 5-101 (224 Kan. cii) of the Code of Professional Responsibility. It would appear that Phillips was also in violation of DR 5-105 (224 Kan. ciii). David Richard argues the case should be reversed and remanded for a new trial so that he can use discovery and obtain Phillips' file and call him as a witness. We summarily reject that argument, as nothing prevented that being done in this action. The estate correctly contends that the sole issue at the trial was the validity of the alleged oral contract, so that in this case an ethical examination should be confined only to injurious conduct related to that contract.

Prior to the claimant's testifying, his former lawyer, as an officer of the court (who now represents the other side), implied to the trier of facts that his former client was not telling the truth. In addition, in a transcript available to the trial judge as part of this case, there is a statement by Phillips to the district judge that he had a thorough knowledge of the agreements made between Alphonse and David Richard. Those questions without doubt pit the lawyer's credibility against the credibility of his former client in the same case in which the lawyer had represented his former client. The Kansas Supreme Court recently stated in *In re Estate of Moore,* 219 Kan. 719, 723-24, 549 P.2d 981 (1976) that "[t]he relationship of attorney and client is a sensitive one and an attorney should always guard against putting himself in a position where a conflict of interest may arise or even a position that might give an appearance of conflicting interest."

In *State v. Leigh,* 178 Kan. at 552, it is stated:

"[A]ttorneys cannot represent conflicting interests or undertake to discharge inconsistent duties. When an attorney has once been retained and received the confidence of a client, he cannot enter the services of those whose interests are adverse to that of his client or take employment in matters so closely related to those of his client or former client as, in effect, to be a part thereof. The rule is a rigid one, and it is well that it is so. It is designed not only to prevent the dishonest practitioner from fraudulent conduct, but to preclude the honest practitioner from placing himself in a position where he may be required to choose between two conflicting duties."

"Differing interests" is defined by the Code of Professional Responsibility as including "every interest that will adversely affect either the judgment or the loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest." (224 Kan. cix.)

Our Supreme Court has held that misconduct of counsel that prevents the parties from obtaining a fair trial constitutes reversible error. *Smith v. Blakey, Administrator,* 213 Kan. 91, 96, 515 P.2d 1062 (1973). When it appears that a violation of the Code of Professional Responsibility has resulted in prejudice to a client or former client to the extent the prejudice created prevented the client or former client from obtaining a fair trial, this Court has authority to grant a new trial.

A client can waive any error created by a violation of the Code of Professional Responsibility in a civil case by failure to object. Although the objection here was lodged long after it should have been, there is nothing in the record to indicate that David Richard or his counsel could have anticipated the questions from the court and answers that would follow, and it is those remarks that are prejudicial. A client may also expressly or impliedly consent to an attorney's representing adverse interests, but there is no evidence in the record in this case that the client did so. In fact, David Richard's testimony and Oglevie's statements to the court indicate David thought Phillips was representing his interests until it became apparent to all concerned that Phillips was not.

Although there is ample evidence to support the trial court if a question of sufficiency of evidence were being presented, that is not the question before this Court. The question here is whether Phillips' answers to the court under the facts of this case denied claimant a fair trial. We believe they did. The trial judge obviously believed Phillips, who did not testify and thus was not available for claimant to cross-examine; nor could claimant attempt to refresh Phillips' recollection. Had the trial judge not believed Phillips, he obviously would have removed him from the case.

Under the circumstances of this case, counsel should have voluntarily withdrawn; and upon counsel's failure to voluntarily withdraw, the trial judge should have removed him. We are of the opinion that David R. Richard was denied a fair trial; therefore,

the judgment cannot stand, regardless of any views we may have from our examination of the record before us concerning the merits of the claim against the estate.

Reversed and remanded for a new trial.