578 So.2d 1117 (1989)
JUNGER UTILITY & PAVING CO., INC. and Melford Gene Oglesby, Appellants,
v.
M. Scott MYERS and Susan Myers and Metropolitan Property & Liability Insurance Company, Appellees.
No. 88-1674.
District Court of Appeal of Florida, First District.
November 15, 1989.
On Motion for Rehearing May 8, 1991.
Thomas J. Maida of Karl, McConnaughhay, Roland & Maida, and George N. Meros, Jr., of Rumberger, Kirk, Caldwell, Cabaniss, Burke & Wechsler, Tallahassee, for appellants.
W. Dennis Brannon of Dewrell & Brannon, Ft. Walton Beach, for appellees M. Scott and Susan Myers.
*1118 Robert C. Palmer, III, of Harrell, Wiltshire, Swearingen, Wilson & Harrell, Pensacola, for appellee Metropolitan Ins.
PER CURIAM.
Appellants seek reversal of a final judgment against them in a negligence action based upon a vehicular accident. They claim reversible error in the trial judge's ruling that their expert accident reconstructionist could not rely upon section 316.237, Florida Statutes, for an assumption that the headlights of the vehicle in which the plaintiff was a passenger illuminated at least 150 feet, the minimum standard set by the statute. They also claim that the final judgment should be reversed because the predecessor judge erred in denying their motion to disqualify plaintiff's counsel (the Dewrell firm) on the grounds of conflict of interest. We affirm the final judgment, but conclude that both issues warrant discussion.
We affirm on the issue of the evidentiary ruling because appellants have not demonstrated that the trial court's ruling deprived them of the ability to present the expert witness' opinion that the driver of the vehicle in which the plaintiff was riding had sufficient time in which to brake or take other evasive action that would have avoided the rear-end accident. Sufficient evidence was presented upon which the expert could have based his opinion, without relying upon the statute.
As to the denial of the motion to disqualify plaintiff's counsel, the uncontroverted evidence indicates that the Dewrell firm represented Junger Utility & Paving Company, Inc. (Junger) on other matters at the time of the accident, that Junger sought and obtained the advice of his attorney at the Dewrell firm the day after the accident regarding how to handle investigators attempting to view the company truck involved in the accident, and that an attorney-client relationship therefore existed between Junger and the Dewrell firm with respect to the accident.
The plaintiff's motion to resolve the allegations of a conflict of interest states: "Immediately following the accident that is the basis for this suit, Plaintiffs retained the firm of Dewrell, Blue & Brannon to represent them against any persons or parties responsible for the injuries or damages they sustained." The uncontroverted evidence indicates that the Dewrell firm thereafter continued to represent Junger in an unrelated matter, and only later indicated to Junger its desire to represent the plaintiffs, which he resisted. Later, Junger dismissed the firm when it was discovered that the firm was in fact representing the plaintiffs. The Dewrell firm then filed the complaint against Junger and its driver.
We find that under the code of ethics applicable to members of The Florida Bar,[1] *1119 this demonstrated conflict of interest required the disqualification of the Dewrell firm. In his order denying the motion to disqualify plaintiff's counsel, the predecessor judge[2] found that Junger had not proved "that the matter embraced in the pending suit is substantially related to any matters or cause of action wherein plaintiffs' counsel previously represented JUNGER UTILITY & PAVING CO., INC." and had not proved "that by reason of the prior representation of defendant by plaintiffs' counsel that plaintiffs have gained unfair advantage in the pending litigation."
To disqualify a private law firm from representing a party whose interests are adverse, the former client need show only that an attorney-client relationship existed, thereby giving rise to the irrefutable presumption that confidences were disclosed during the course of that relationship, and that the matter in which the law firm subsequently represented the interest adverse to the former client is the same matter or substantially similar to the matter in which it represented the former client.[3] Junger was not required to demonstrate specific prejudice to his case in order to justify disqualification. The judge should have disqualified the Dewrell firm from representing the plaintiffs in this action.
We reject appellees' contentions that appellants waived their right to raise the issue of disqualification, either before the trial court or on appeal. However, we find that under the particular circumstances of this case, appellants have not demonstrated that the final judgment should be reversed. While, for purposes of interlocutory review by certiorari, it is unnecessary to demonstrate actual prejudice to justify disqualification of opposing counsel, once the parties have proceeded through trial, most courts require a showing of prejudice in order to reverse the final judgment.[4] Appellants did not seek review by certiorari of the denial of their motion to disqualify plaintiff's counsel. Because the record does not demonstrate that appellants' case was actually prejudiced by confidences disclosed to the Dewrell firm, justification for reversal of the final judgment at this stage of the proceedings has not been demonstrated.
The final judgment is AFFIRMED.
BOOTH, JOANOS and BARFIELD, JJ., concur.

ON MOTION FOR REHEARING
The Motion for Rehearing is denied; however, we certify the following question to the Florida Supreme Court because it involves a matter of great public importance:
While, for purposes of interlocutory review by certiorari, it is unnecessary to demonstrate actual prejudice to justify disqualification of opposing counsel, once the parties have proceeded through trial, is a showing of prejudice required in order to reverse the final judgment?
JOANOS and BARFIELD, JJ., concur. BOOTH, J., dissents with written opinion.
*1120 BOOTH, Judge, dissenting.
I would grant rehearing and recede from that portion of the original opinion[1] which holds that, although appellants' motion to disqualify appellees' attorneys should have been granted below, the judgment for appellees would be affirmed.
The facts are essentially undisputed. On February 4, 1984, Dr. Scott Myers was seriously injured when the automobile in which he was riding as a passenger ran into the rear of a dump truck owned by appellant Junger Utility and Paving Company and driven by appellant Melford Oglesby. The automobile in which Myers was riding was in turn rear-ended by another automobile.
On the day following the accident, Dean Junger, president of appellant corporation,[2] called Walter Steigleman of the law firm of Dewrell, Blue, and Brannon (Dewrell firm), which firm had been earlier engaged on an ongoing basis to represent the paving company in "general" legal matters such as collections, litigation, and regulatory disputes. Junger related to Steigleman the essential details of the accident as he understood them and solicited Steigleman's advice on how to deal with incoming requests to inspect and photograph the truck involved and for statements regarding the accident. As he was to do several times over the next year or so, Junger also told Steigleman that the paving company was not at fault and that Junger personally had gone to the site of the accident shortly after it occurred to make sure the truck was not moved until the investigating officers were satisfied that the rear lights on the truck were functioning properly. Junger requested advice from Steigleman, who told him not to discuss the accident with anyone but his insurance company, not to let anyone see the truck, and to direct those inquiring about the accident to insurance company attorneys.
Almost immediately after the events described above, and without advising Junger, the Dewrell firm accepted employment on behalf of Dr. Myers and his wife to represent them "against any persons responsible for the injuries or damages they sustained."
It was 18 months or more after the accident before Mr. Junger and his wife were told at a meeting in the Dewrell firm's offices that the firm wanted to represent the Myers against Junger's insurance company. At the time, Junger expressed his concern to Steigleman that such a suit might have an adverse affect on his ability to obtain insurance. There had been previous conversations about the possibility of the Dewrell firm filing suit against the driver of the car in which Dr. Myers was riding at the time of the accident. However, the record reflects that at no time up to and including the date of the meeting in the Dewrell office was Junger advised that the firm intended to sue Junger's company on the Myers' behalf. Junger terminated his relationship with the Dewrell firm a few weeks after being told that it planned to sue his company. Some nine months later, the instant litigation was filed.
The Dewrell firm filed the complaint in the personal injury action on behalf of the Myers in July of 1986. Shortly thereafter, counsel for appellants raised the issue of conflict of interest on the part of the Dewrell firm. Efforts to resolve this issue informally proved unavailing, and the Dewrell firm sought judicial resolution by filing an appropriate motion and setting the matter for hearing. Appellants countered with a motion to disqualify the Dewrell firm from representing Dr. and Mrs. Myers.
At the hearing on appellants' disqualification motion, Dean Junger was the only witness called by either side. He testified concerning the ongoing nature of his company's relationship with the Dewrell firm, the substance of his telephone conversation with Steigleman the day following the accident, subsequent conversations between the two, the meeting between himself, his wife, Steigleman, and Ladon Dewrell at the *1121 firm office, and the termination of his relationship with the Dewrell firm.
Dennis Brannon, a member of the Dewrell firm, argued to the court that the matters in which the firm represented Junger in the past were not substantially related to the accident involving Dr. Myers and that Junger had not established that such prior representation involved disclosures that would compromise his defense of the Myers' claim. No member of the firm testified at the hearing.
Counsel for Junger argued that the Dewrell firm had, since Junger's telephone conversation with Steigleman the day following the accident and until Junger terminated his relationship with the firm, represented both parties in the matter at hand. In a written order entered subsequently, the trial court denied Junger's motion to disqualify the Dewrell firm. Junger did not seek interlocutory review of this order.
At the trial of the personal injury action, an issue arose regarding whether or not the rear lights on Junger's dump truck were in good working order at the time of the accident.[3] Witnesses called by Dr. Myers testified that the rear lights were not on at the time of the collision. The investigating Highway Patrol trooper testified that the rear lights were working when he arrived at the scene. Mr. Brannon of the Dewrell firm cross-examined Junger concerning the lights for some 10 pages in the record and specifically asked whether Junger knew if anyone had "messed with" the left tail light. No evidence was introduced, however, of any tampering with the truck lights.
During closing argument, Mr. Dewrell argued:
We have all the people before the accident saying no lights, including, incidently, Mr. Williams, but then there is Trooper Bozeman, and Trooper Bozeman says after the accident he saw the light on the back of the truck. That was puzzling to me. How could that be if there was no light before the accident while the truck was running down the road, how is there light on the back of this truck after the accident? I sought two other possible explanations for that. One is that somebody, assuming that there was no light on before the accident, somebody tampered with the light so that it would come on... . That was one possibility that was certainly suggested by this defendant's testimony and further suggested when we got around to taking Mr. Williams' deposition that that's what was going on, that Mr. Junger was messing with the lights.

When he [Junger] got to the scene, he was concerned about lights on the truck, which makes sense to me if he, as Mr. Williams said, knew there wasn't lights on the truck or he knew there were problems with the lights on the truck, that he would go over there and be messing with those lights. [emphasis added]
After deliberating, the jury returned a verdict for Dr. and Mrs. Myers and against Junger Utility and Paving Company and the driver of Junger's dump truck, Melford Oglesby. The instant appeal ensued.
The key fact is that the Dewrell firm represented both Junger Utility and Paving Company and the Myers, adverse parties with respect to the automobile collision of February 4, 1984, which gave rise to the personal injury action and judgment below. Furthermore, for some 18 months the Dewrell firm represented both adverse parties. This, then, is a clear case of conflict, and the trial court abused its discretion in failing to grant the motion to disqualify. Andrews v. Allstate Insurance Company, 366 So.2d 462 (Fla. 4th DCA 1978). This court's original opinion in the case finds a breach of the Code of Ethics based on demonstrated conflict of interest. Page 1118.
Appellees contend, however, that even if the Dewrell firm should have been disqualified, failure to grant the pretrial motion is not a basis for new trial after judgment in the absence of a showing of "actual prejudice" to the former client. Our original opinion adopted that position citing to general *1122 statements of law in several treatises[4] that where failure to disqualify the attorney was prejudicial error,[5] judgment for the attorney's subsequent client would be reversed. Cases cited in support of those statements do not support the broad rule stated. Further study reveals that in cases where the attorney represented adverse parties with respect to the identical controversy, the great majority of courts hold that the judgment will be set aside at the behest of the former client. In such cases the courts do not require an independent showing that prejudice resulted to the former client as a result of the attorney conflict.
The traditional statement of the rule is that judgment in an action in which the same attorney represented both plaintiff and defendant who were adversely interested, will, in the absence of a special circumstance, be vacated at the instance of the party against whom it was rendered. 154 A.L.R. Attorney Conflict 490, 502.[6]
One of the earliest reported case dealing with the question of prejudice is Weidekind v. Tuolumne County Water Company, 74 Cal. 386, 19 P. 173, 174 (1887), a civil suit for damages due to the alleged negligence of the defendant water company. After verdict for defendant, plaintiff sought a new trial on the ground that the defendant's attorney had previously represented him in the trial of the same case.
On appeal, the reviewing court held:
This we think was an error, and, in the absence of any proof to the contrary, injury must be presumed to have resulted to the plaintiff, whereby he was prevented from having a fair trial of his case. We perceive no further prejudicial error, but for the reasons indicated the judgment and order should be reversed, and the cause remanded for a new trial. [emphasis added]
In United States v. Bishop, 90 F.2d 65, 66 (6th Cir.1937) (suit on a war risk insurance *1123 policy), the trial court denied the government's motion to exclude counsel for appellee on the ground that the same counsel had represented the government in the first trial of the matter. Judgment was reversed and a new trial ordered, the appellate court holding:
We think the denial of this motion constituted prejudicial error. Appellee urges that since his record in the Veterans' Bureau is available to him or his counsel ..., the error, if any, was not prejudicial. This fact does not dispose of the serious question here presented. Counsel for the Government in the first trial necessarily was possessed of confidential information not appearing in the record. The interests of the parties were adverse. It is well settled that an attorney who has acted for one party cannot render professional services in the same matters to the other party, and it makes no difference in this respect whether the relation itself has terminated, for the obligation of fidelity still continues... . While no fraudulent intent appears, the practice gave appellee an improper advantage, and the ethical objections are inseparable. We consider this error so vital that even though no other error appeared, the judgment necessarily must be reversed. [emphasis added]
Other courts have extended this rule and require reversal of judgment in cases where the subject matters of the conflicting representation, though not identical, were either closely or substantially related. In Tilley v. King, 190 Ga. 421, 9 S.E.2d 670 (1940), the attorney appearing as counsel for the propounder in a will contest, had previously been employed by the caveator to prosecute lunacy proceedings against the testator and to represent the caveator in divorce proceedings against the testator. The trial court denied the petition to disqualify the attorney, and verdict was ultimately rendered upholding the validity of the will. On appeal, the Supreme Court of Georgia reversed, remanded for a new trial, and stated that the doctrine of harmless error was inapplicable, holding (9 S.E.2d at 673, 674):
We realize that under the rule laid down an attorney will sometimes find, as most of us have, that by reason of having been employed or retained in some small matter, or by some casual prior employment, he has disqualified himself from taking employment in subsequent matters of importance; yet such is a part of a lawyer's life. This is not, as contended, a case for the application of the doctrine of harmless error. Under the testimony in the record a verdict in favor of the will was justified. There was, however, enough evidence to justify a verdict to the contrary. It is impossible to say how far the conduct of the propounder's case by the able attorney whom we have had to hold disqualified to do so may have contributed to the result; but our experience and common knowledge leads us to know that in a litigation of this kind this is not a factor to be ignored. [emphasis added]
In City of Whitewater v. Baker, 99 Wis.2d 449, 299 N.W.2d 584 (Ct.App. 1980), the property owner appealed from the dismissal of his suit for declaratory and injunctive relief to prevent the attorney's encroachment on his property. The judgment in favor of the governmental entity in that case was reversed on appeal because the city was represented in the suit by an attorney who had previously represented the property owner in acquiring the property. The court held that even though the trial had revealed "no particularly damaging information" about the former client that the attorney could not have discovered outside the attorney-client relationship, a new trial was required (299 N.W.2d at 588):

In our perception, the only viable remedy for the trial court's error in permitting Dempsey to represent the City against Pelishek is to award Pelishek a new trial. Pelishek argues, with some justification, that his confidences to Dempsey are now a matter of record and could be used against him in a new trial. The confidences of which Pelishek expresses most concern consists of his intentions regarding the grist mill property, his financial situation in general and his physical handicap. Our comprehensive *1124 review of the record in this case, however, reveals no particularly damaging information about Pelishek which an attorney would not otherwise discover while representing the City against Pelishek. Nevertheless, to protect Pelishek from any unfairness which could result from opposing counsel's access to the Dempsey law office file on the representation of Pelishek from 1969 to 1972 in the acquisition of the mill property, we direct that the file be suppressed and not used at trial or reviewed by the City's counsel. [emphasis added]
Two criminal cases are cited in support of the "prejudice" rule in 52 A.L.R.2d 1286, supra: Steeley v. State, 17 Okla. Cr. 252, 187 P. 821 (1921), and Ward v. State, 33 Okla. Cr. 182, 242 P. 575, 576 (1926). In Steeley, the court held (187 P. at 823):
The rule has long been firmly established that an attorney cannot represent conflicting interests or undertake to discharge inconsistent duties... . This rule has been so strictly enforced that it has been held that an attorney, in terminating his employment, cannot thereafter act as counsel against his client in the same general matter, even though while acting for his former client he acquired no knowledge which could operate to the client's disadvantage in the subsequent adverse employment. [emphasis added]
In the Ward case, the court reversed the conviction on the ground of attorney conflict, holding (242 P. at 576): "We do not impute to the attorneys here any dishonest purpose, but a conviction under such circumstances, irrespective of the guilt of the defendant, cannot be permitted to stand." (emphasis added). See also Earl Scheib, Inc. v. Superior Court for County of Los Angeles, 253 Cal. App.2d 703, 61 Cal. Rptr. 386, 390 (1967), wherein the disqualification of attorney was sought during the trial. The court held that the former client could raise the issue of conflicting representation at any time, holding:
We are equally satisfied that, in deciding whether an attorney should be permitted to continue to represent a client when the issue of a possible conflict is properly raised, the question of whether that client may have been prejudiced by reason of the delay by his former client in raising the issue, by reason of the time spent on the matter in the meantime or otherwise is not relevant. In such a case the question is whether the former client has been prejudiced. In the absence of any proof to the contrary, if it is established that the attorney is in fact undertaking to represent conflicting interests, injury to the former client must be presumed to have resulted by reason of such representation. [emphasis added]
In Estate of Richard, 4 Kan. App. 2d 26, 602 P.2d 122 (1980), the court held that the trial court's error in denying motion to disqualify the attorney, thereby allowing that attorney to continue in the case, in itself prejudiced the former client. The trial court ruled that the former client was denied a fair trial under these circumstances regardless of the correctness of the judgment on the merits and sufficiency of the evidence supporting it. The court held:
Although there is ample evidence to support the trial court if a question of sufficiency of evidence were being presented, that is not the question before this Court. The question here is whether Phillips' [attorney] answers to the court under the facts of this case denied claimant a fair trial. We believe they did. The trial judge obviously believed Phillips [who stated he did not represent client in related matter], who did not testify and thus was not available for claimant to cross-examine; nor could claimant attempt to refresh Phillips' recollection. Had the trial judge not believed Phillips, he obviously would have removed him from the case.
Under the circumstances of this case, counsel should have voluntarily withdrawn; and upon counsel's failure to voluntarily withdraw, the trial judge should have removed him. We are of the opinion that David R. Richards was denied a fair trial; therefore, the judgment cannot stand, regardless of any views we may have from our examination of the record *1125 before us concerning the merits of the claim against the estate.
In the instant case, appellants have sought rehearing of this court's prior opinion, asserting that (1) actual prejudice is not needed for reversal, and (2) if proof of prejudice is required, the record reveals appellants' former attorneys used confidences disclosed in the attorney-client relationship. The motion for rehearing is, in part, as follows:
During the first confidential communication between Appellant, Dean Junger, and the Dewrell firm (and well before the filing of the Complaint), Junger told his attorneys that he had gone to the scene after the accident and that he would not let the dump truck be moved until the highway patrolman had seen that the truck's tail lights were functioning properly (R.Vol. XLVII, pp. 7-8). These disclosures were later used against him by the Dewrell firm at trial. The Dewrell firm put on evidence to suggest that Dean Junger had tampered with the tail lights after the accident, but before the patrolman had arrived. (R. at Vol. XLVI, pp. 663-665; 675; 685-690; 736-740; 761-768). Mr. Dewrell's closing argument leaves no doubt about the accusation:
... . [closing argument quoted, supra at p. 5]
Manifestly, Appellees gained an unfair advantage at trial when their attorneys used information against Appellants  first obtained through privileged, confidential communications with Appellants  that tended to discredit Appellants and to suggest that they had tampered with evidence. The Dewrell firms's use of this privileged information caused actual prejudice to Appellants and their ability to convince a jury that they were not at fault.
In reply to petition for rehearing, appellees argue, inter alia, that it would be "poor policy" to allow "parties in appellants' position to take a `free shot' at a jury trial, knowing that if they receive an unfavorable verdict they may take an appeal without the need to prove harmful error."
This is a common concern, as is the consideration of detriment to the interest of the subsequent client resulting from setting aside the judgment. These matters have been considered in a number of the cases cited heretofore but found not to override public policy supporting the right to a fair trial and public confidence in the legal profession and the judicial system. Both the legal profession and the judicial system are at risk where there is any hint of suspicion that an attorney's fidelity to his client and to his oath are less than constant.
The Florida Supreme Court, in the recent decision in State Farm Mutual Automobile Insurance Company v. K.A.W., 575 So.2d 630 (Fla. 1991), held the trial court should have granted defendants' motion to disqualify counsel for plaintiffs in a personal injury case, holding:
The purpose of the requirement that an attorney maintain client confidences is twofold. It advances the interests of the client by encouraging a free flow of information and the development of trust essential to an attorney-client relationship. [citation omitted]. However, it also serves a second purpose fundamental to a fair adversary system. Our legal system cannot function fairly or effectively if an attorney has an informational advantage in the form of confidences gained during a former representation of his client's current opponent....
... .
... The Rules of Professional Conduct requiring confidentiality serve the same purposes as the confidentiality requirements of the Code of Professional Responsibility. Similarly, the need for the irrefutable presumption continues to exist, just as under the former code. The presumption acknowledges the difficulty of proving that confidential information useful to the attorney's current client was given to the attorney. It also protects the client by not requiring disclosure of confidences previously given to the attorney. See Government of India v. Cook Indus., Inc., 422 F. Supp. 1057, 1060 (S.D.N.Y. 1976) (if two actions are *1126 substantially related, court will not require that attorney had access to confidential information, nor give weight to attorney's assertion that he had no access to and did not possess confidential information), aff'd, 569 F.2d 737 (2d Cir.1978).
Accordingly, we disagree with the court below that actual proof of prejudice is a prerequisite to disqualification under these circumstances. The Schlesinger firm represented Mr. Wilkerson in the personal injury action for more than two years, and the existence of this relationship raised the irrefutable presumption that confidences were disclosed.[7]
The rationale for there being an irrebuttable presumption concerning confidences is to avoid inquiry and proof as to the confidences themselves, thereby defeating the very purpose of rules preventing disclosure. The ethical principle at issue is an attorney's duty to maintain the confidences of his client, a principle embodied in the former Florida Bar Code of Professional Responsibility and current Rules of Professional Conduct.[8] The same principles apply after judgment.
After judgment, the extent and effect of the breach of the confidential relationship may, or may not, be more apparent than prior to trial. I suggest that the former client is still not required to prove what was disclosed during the attorney-client relationship or how matters disclosed were used. The subtleties of possible uses may well defy proof, as recognized in the muchquoted case of Emile Industries, Inc. v. Patentex, Inc., 478 F.2d 562, 571 (2d Cir.1973):
Even the most rigorous self-discipline might not prevent a lawyer from unconsciously using or manipulating a confidence acquired in the earlier representation and transforming it into a telling advantage in the subsequent litigation... . The dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case.
Here, the uncontroverted testimony at the postjudgment hearing, establishes Junger consulted with a firm member about the accident and specifically expressed concern about the operability of the lights on the truck. He also stated that he had gone to the scene of the accident and would not *1127 let the investigating officer move the vehicle until he was sure the lights were working. This information may have formed the basis for plaintiff's cross-examination of Junger concerning the lights, and for the closing argument indicating that Junger "was messing with the lights" after the accident.
Appellees also contend in reply to rehearing that any information acquired by them during their representation of Junger were not "confidences" and point to the fact that a number of other people saw Junger at the site of the accident. The law is, however, that the confidential nature of the disclosure is not affected by the fact that the information could have been obtained from nonconfidential sources.[9] Further, the fact that Junger testified at the hearing on motion to disqualify as to some specific matters divulged during the attorney-client relationship does not mean that additional privileged matters were not involved. What Junger did reveal to his former counsel may or may not have formed the basis for the firm's handling of any number of aspects of the case. The court may not inquire as to that,[10] and the former client cannot be required to disclose confidences nor prove prejudice in a case such as this. The conflicting representation here requires reversal for a new trial, even had there been no apparent use of client confidences. Attorneys who elect to continue representation under these circumstances do so at their risk.
NOTES
[1] Specifically, the Code of Professional Responsibility, Canon 4 ("A Lawyer Should Preserve the Confidences and Secrets of a Client"), Canon 5 ("A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client") and Canon 9 ("A Lawyer Should Avoid Even the Appearance of Professional Impropriety"), and the attendant ethical considerations and disciplinary rules. The Code of Professional Responsibility was superceded in 1987 by the Rules Regulating the Florida Bar. The ethical considerations addressed in Canons 4 and 5 are now embodied in Rules 4-1.7 and 4-1.9 (set out below). Although the new Rules do not contain the express language of Canon 9 and its explanatory ethical considerations regarding the avoidance of even the appearance of impropriety, this fact does not persuade us that they are no longer pertinent. See Bammac, Inc. v. Grady, 500 So.2d 274, 280 (Fla. 1st DCA 1986).

Rule 4-1.7(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to the interests of another client, unless:
(1) The lawyer reasonably believes the representation will not adversely affect the lawyer's responsibilities to and relationship with the other client; and
(2) Each client consents after consultation. Rule 4-1.9 Conflict of Interest; Former Client
A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
(b) Use information relating to the representation to the disadvantage of the former client except as rule 4-1.6 would permit with respect to a client or when the information has become generally known.
[2] Judge Wells granted Junger's motion for recusal which was based upon allegations that Judge Wells had given investigators information regarding Dean Junger's co-defendant in a federal fraud case. On appeal, appellants contend that Judge Wells violated their due process rights by ruling on the motion to disqualify plaintiffs' counsel at a time when he suffered from a disqualifying prejudice against Junger. However, appellants failed to preserve this issue for appeal by refiling the motion with the successor judge or otherwise seeking vacation of the ruling based upon the judge's alleged prejudice.
[3] Ford v. Piper Aircraft Corporation, 436 So.2d 305 (Fla. 5th DCA 1983), rev. den., 444 So.2d 417 (Fla. 1984); Sears, Roebuck & Company v. Stansbury, 374 So.2d 1051 (Fla. 5th DCA 1979). See also State v. Cote, 538 So.2d 1356 (Fla. 5th DCA 1989); Brent v. Smathers, 529 So.2d 1267 (Fla. 3d DCA 1988); Lackow v. Walter E. Heller & Co. Southeast, Inc., 466 So.2d 1120 (Fla. 3d DCA 1985); Trautman v. General Motors Corporation, 426 So.2d 1183 (Fla. 5th DCA 1983).
[4] Annotation, Propriety and effect of attorney representing interest adverse to that of a former client, 52 A.L.R.2d 1243, 1286; 7 Am.Jur.2d Attorneys at Law, § 189.
[1] Page 1118, 14 F.L.W. 2650 (Nov. 15, 1989).
[2] Junger Utility and Paving Company, Inc. is a family corporation owned by Junger and his wife.
[3] The accident occurred as darkness was falling.
[4] 7 Am.Jur.2d Attorneys at Law § 189 (1980):

If the trial court fails to restrain the attorney in such a case [where unlawful conflict of interest is revealed] and the failure is prejudicial, a judgment obtained in favor of the subsequent client may be reversed on appeal. [Footnote citing: United States v. Bishop, 90 F.2d 65 (6th Cir.1937); Weidekind v. Tuolumne County Water Co. [74 Cal. 386], 19 P. 173 (Cal. 1887); Tilley v. King [190 Ga. 421], 9 S.E.2d 670 (Ga. 1940); People ex rel. Livers v. Hanson [290 Ill. 370], 125 N.E. 268 (Ill. 1919); Wilson v. Wahl [182 Kan. 532], 322 P.2d 804 (Kan. 1958). Annotation: 52 A.L.R.2d 1286, §§ 17 et seq.]
Annotation, Propriety and effect of attorney representing interest adverse to that of former client, 52 A.L.R.2d 1286:
Corollary to the principle that an attorney who is guilty of improper conduct in representing an interest adverse to that of a former client may be restrained from acting in behalf of the subsequent client (see §§ 14-16, supra), is the rule that, where such misconduct is shown, a judgment in favor of the subsequent client will be reversed if the trial court's failure to restrain the attorney amounts to prejudicial error. [emphasis added] [Footnote citing (in addition to those cited in Am.Jur.2d, supra): General Contract Purchase Corp. v. Armour, 125 F.2d 147 (5th Cir.1942); Hawley v. Hawley, 114 F.2d 745 (DC Cir.1940); State v. Leigh [178 Kan. 549], 289 P.2d 774 (Kan. 1955); Baker v. Farnsworth [117 Neb. 504], 221 N.W. 17 (Neb. 1933 [1928]); Federal Trust Co. v. Damron [124 Neb. 655], 247 N.W. 589 (Neb. 1933); Sedlak v. Duda [144 Neb. 567], 13 N.W.2d 892 (Neb. 1944), 154 A.L.R. 490 (1944)].
[5] The above-quoted authorities, Id. at n. 4, do not support a rule requiring that there be "actual prejudice" in order to reverse, and as discussed further herein, do not require an independent showing of prejudice in facts such as these. But see, First Small Business Investment Co. v. Intercapital Corp., 108 Wash.2d 324, 738 P.2d 263 (1987); Barreda Corp. v. Ballenger, 116 S.W.2d 442 (Tex.Civ.App. 1938), indicating contrary view.
[6] 154 A.L.R. at 502:

By weight of authority, a judgment in an action in which the same attorney represented both plaintiff and defendant who were adversely interested will, in the absence of special circumstances, be vacated at the instance of the party against whom it was rendered.
In Sedlak v. Duda, 13 N.W.2d 892 (Neb. 1944), the annotated case, the court set aside a judgment of foreclosure, holding:
There is another more important reason, however, which bars the defendant from claiming the benefit of estoppel and retaining the benefits of the foreclosure litigation. The record discloses that the attorneys representing defendant had been plaintiff's attorneys in small matters for many years, and it is admitted that they were employed as attorneys to represent plaintiff and his wife in the particular litigation before the defendant employed them. The interests of plaintiff and defendant were unquestionably adverse, ... .
[7] The Supreme Court in State Farm Mutual Automobile Insurance Company v. K.A.W., 575 So.2d 630 (Fla. 1991), footnoted to our original Junger opinion, page 1118, noting the holding of that case that the judgment would stand in the absence of a showing of actual prejudice. The Supreme Court opinion distinguishes, but does not comment on the correctness of that portion of the holding.
[8] Florida Bar Code of Professional Responsibility, effective prior to January 1, 1987, provided, in part, as follows:

Disciplinary Rule 4-101... . .
... .
(B) ... [A] lawyer shall not knowingly:
(1) Reveal a confidence or secret of his client.
(2) Use a confidence or secret of his client to the disadvantage of the client.
... .
Disciplinary Rule 5-105... . .
(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment... .
... .
Canon 9:
A LAWYER SHOULD AVOID EVEN THE APPEARANCE OF PROFESSIONAL IMPROPRIETY.
Florida Rules of Professional Conduct, effective after January 1, 1987, provides, in part:
Rule 4-1.9... .
A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation;... .
Rule 4-1.7... .
(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to the interests of another client, unless:
(1) The lawyer reasonably believes the representation will not adversely affect the lawyer's responsibilities to and relationship with the other client; and
(2) Each client consents after consultation.
[9] H. Drinker, Legal Ethics 135 (1953):

[T]he client's privilege in confidential information disclosed to his attorney "is not nullified by the fact that the circumstances to be disclosed are part of a public record, or that there are other available sources for such information, or by the fact that the lawyer received the same information from other sources.
See, e.g., United States v. Bishop, 90 F.2d 65 (6th Cir.1937), quoted at p. 7; Government of India v. Cook Industries, 422 F. Supp. 1057, 1060 (S.D.N.Y. 1976).
[10] Emle Industries, Inc. v. Patentex, Inc., 478 F.2d 562, 571 (2d Cir.1973):

[T]he court need not, indeed cannot, inquire whether the lawyer did, in fact, receive confidential information during his previous employment which might be used to the client's disadvantage. Such an inquiry would prove destructive of the weighty policy considerations that serve as the pillars of Canon 4 of the Code, for the client's attorney's claim of non-access would necessarily be to describe in detail the confidential information previously disclosed and now sought to be preserved. [emphasis in original]